# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**January 2015 Term**

_____

**No. 14-0441**

_____

**FILED**

**April 24, 2015**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**SCHUMACHER HOMES OF CIRCLEVILLE, INC.,**
a foreign corporation,
**Defendant Below, Petitioner**

**v.**

**JOHN SPENCER**
**and CAROLYN SPENCER,**
**Plaintiffs Below, Respondents**

_____

**Appeal from the Circuit Court of Mason County**
**The Honorable David W. Nibert, Judge**
**Civil Action No. 13-C-116**

**AFFIRMED**

_____

**Submitted: March 11, 2015**
**Filed: April 24, 2015**

Don C.A. Parker, Esq.                Randall L. Trautwein, Esq.
Nicholas P. Mooney II, Esq.          Michael L. Powell, Esq.
Sarah B. Smith, Esq.                 Lamp, Bartram, Levy, Trautwein &
Spilman Thomas & Battle PLLC         Perry P.L.L.C.
Charleston, West Virginia            Huntington, West Virginia
Counsel for the Petitioner           Counsel for the Respondents

JUSTICE KETCHUM delivered the Opinion of the Court.

JUSTICE BENJAMIN dissents, and reserves the right to file a separate opinion.

JUSTICE LOUGHRY dissents, and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1.    "An order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine."  Syllabus Point 1, *Credit Acceptance Corp. v. Front*, 231 W.Va. 518, 745 S.E.2d 556 (2013).

2.    "Under the Federal Arbitration Act, 9 U.S.C. § 2, a written provision to settle by arbitration a controversy arising out of a contract that evidences a transaction affecting interstate commerce is valid, irrevocable, and enforceable, unless the provision is found to be invalid, revocable or unenforceable upon a ground that exists at law or in equity for the revocation of any contract."  Syllabus Point 6, *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 724 S.E.2d 250 (2011), reversed on other grounds by *Marmet Health Care Ctr., Inc. v. Brown*, 132 S.Ct. 1201 (2012).

3.    "Under the Federal Arbitration Act, 9 U.S.C. § 2, and the doctrine of severability, only if a party to a contract explicitly challenges the enforceability of an arbitration clause within the contract, as opposed to generally challenging the contract as a whole, is a trial court permitted to consider the challenge to the arbitration clause. However, the trial court may rely on general principles of state contract law in determining the enforceability of the arbitration clause. If necessary, the trial court may consider the context of the arbitration clause within the four corners of the contract, or consider any extrinsic evidence detailing the formation and use of the contract."  Syllabus Point 4, *State ex rel. Richmond American Homes of West Virginia, Inc. v. Sanders*, 228 W.Va. 125, 717 S.E.2d 909 (2011).

i

4.      "When a trial court is required to rule upon a motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–307 (2006), the authority of the trial court is limited to determining the threshold issues of (1) whether a valid arbitration agreement exists between the parties; and (2) whether the claims averred by the plaintiff fall within the substantive scope of that arbitration agreement." Syllabus Point 2, *State ex rel. TD Ameritrade, Inc. v. Kaufman*, 225 W.Va. 250, 692 S.E.2d 293 (2010).

5.      A "delegation provision" is a clause, within an agreement to arbitrate, which explicitly states that the parties to the agreement give the arbitrator the sole power to decide the validity, revocability or enforceability of the arbitration agreement under general state contract law.

6.      Under the Federal Arbitration Act, 9 U.S.C. § 2, and the doctrine of severability, where a delegation provision in a written arbitration agreement gives to an arbitrator the authority to determine whether the arbitration agreement is valid, irrevocable or enforceable under general principles of state contract law, a trial court is precluded from deciding a party's state contract law challenge to the arbitration agreement. When an arbitration agreement contains a delegation provision, the trial court may only consider a challenge that is directed at the validity, revocability or enforceability of the delegation provision itself.

7.      "Nothing in the Federal Arbitration Act, 9 U.S.C. § 2, overrides normal rules of contract interpretation. Generally applicable contract defenses—such as laches, estoppel, waiver, fraud, duress, or unconscionability—may be applied to

invalidate an arbitration agreement." Syllabus Point 9, *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 724 S.E.2d 250 (2011), reversed on other grounds by *Marmet Health Care Ctr., Inc. v. Brown*, 132 S.Ct. 1201 (2012).

8.      Under the Federal Arbitration Act, 9 U.S.C. § 2, there are two prerequisites for a delegation provision to be effective. First, the language of the delegation provision must reflect a clear and unmistakable intent by the parties to delegate state contract law questions about the validity, revocability, or enforceability of the arbitration agreement to an arbitrator. Second, the delegation provision must itself not be invalid, revocable or unenforceable under state contract law.

Justice Ketchum:

In recent years, the United States Supreme Court has doled out several complicated decisions construing the Federal Arbitration Act, 9 U.S.C. §§ 1-16. Read together, these decisions create an eye-glazing conceptual framework for interpreting contracts with arbitration clauses that is politely described as "a tad oversubtle for sensible application."[1] The Supreme Court sees its arbitration decisions as a series of "clear instruction[s]." *Marmet Health Care Ctr., Inc. v. Brown*, 132 S.Ct. 1201, 1203 (2012). But experience suggests that the rules derived from these decisions are difficult for lawyers and judges – and nearly impossible for people of ordinary knowledge – to comprehend.[2] Still, no matter how confounding the Supreme Court's arbitration decisions may seem, we are constitutionally bound to apply them to arbitration clauses that involve interstate transactions.

We now attempt to peel back a few of the onion layers of the Supreme Court's arbitration decisions. We are asked to apply the Supreme Court's rulings to a construction contract which contains an arbitration clause. Nestled within the arbitration clause is what the Supreme Court terms a "delegation provision." Under the Federal Arbitration Act, the validity and enforceability of the arbitration clause is normally

---

[1] Alan Scott Rau, *Arbitral Power and the Limits of Contract: The New Trilogy*, 22 Am. Rev. Int'l Arb. 435, 519 (2011).

[2] The rulings of the Supreme Court in this field are "difficult for any lawyer—or any person—to accept." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 87, 130 S.Ct. 2772, 2787 (2010) (Stevens, J., dissenting).

1

determined by a circuit court applying state contract law. However, the contracting parties may incorporate a delegation provision into the arbitration clause saying that the validity and enforceability of the arbitration clause under state contract law will be decided by the arbitrator. We are specifically asked to enforce an alleged delegation provision in the parties' construction contract.

When a party invokes a delegation provision, United States Supreme Court cases interpreting the Federal Arbitration Act require that the language of the written delegation provision reflect a clear and unmistakable intent by the parties to delegate state contract law questions about the validity, revocability, or enforceability of the arbitration agreement to an arbitrator. The burden is on the party who opposes enforcement of the delegation provision to challenge the provision in the trial court. The party opposing enforcement must show why under precepts of state contract law that the delegation provision itself is invalid, revocable or unenforceable.

The Circuit Court of Mason County entered an order refusing to enforce the arbitration clause that contained a delegation provision after finding the arbitration clause was unconscionable. On appeal of that order, we find that the delegation provision does not clearly and unmistakably reflect an intention by the parties to assign to the arbitrator all questions about the enforceability of the arbitration clause. As set forth below, we affirm the circuit court's order.

**I.**
**FACTUAL AND PROCEDURAL BACKGROUND**

In June 2011, plaintiffs John and Carolyn Spencer signed a form contract with defendant Schumacher Homes of Circleville, Inc. ("Schumacher"), for the construction of a house in Milton, West Virginia. The contract contains an arbitration clause by which the parties agreed "that any claim, dispute or cause of action, of any nature . . . shall be subject to final and binding arbitration by an arbitrator[.]"

Within the arbitration clause is a provision that Schumacher contends is a "delegation provision" saying that the parties agreed to delegate, from the courts to an arbitrator, any question about the enforceability of the arbitration clause. A delegation provision is a written agreement, usually nestled within the arbitration clause, to vest the arbitrator with sole authority to resolve any dispute over the validity, revocability or enforceability of the arbitration clause under state contract law. The provision in Schumacher's form contract that it alleges is a delegation provision states:

> The arbitrator(s) shall determine all issues regarding the arbitrability of the dispute.

In July 2013, the plaintiffs brought suit against Schumacher in the circuit court claiming that there were defects in the newly-built house. In August 2013, Schumacher filed a motion asking the circuit court to dismiss the plaintiffs' suit and to compel the plaintiffs to participate in arbitration. Neither Schumacher's motion nor its legal memorandum supporting the motion made any mention of the delegation provision. The plaintiffs responded to the motion by asserting that the court should find that the entire arbitration clause was unconscionable and unenforceable under state contract law.

3

Six months later, at a hearing in February 2014, Schumacher asserted for the first time that the arbitration clause contained a delegation provision. Orally (and not in writing), Schumacher argued to the circuit court that, because of the delegation provision, the court had no power to weigh the unconscionability of the arbitration clause. Schumacher stated that upon invocation of a delegation provision, "that's really the end of the inquiry" and "[i]t's for the arbitrator to decide whether [the arbitration clause is] unconscionable." The plaintiffs, apparently caught off guard, did not mention the delegation provision in their oral argument to the circuit court. The plaintiffs' argument centered solely upon the unconscionable aspects of the arbitration clause.

In an order dated March 6, 2014, the circuit court denied Schumacher's motion to dismiss and compel arbitration. The circuit court found that, as a whole, the arbitration clause was procedurally and substantively unconscionable. The circuit court's order did not address the delegation provision.

Schumacher now appeals the circuit court's order.

## II.
## STANDARD OF REVIEW

"An order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine." Syllabus Point 1, *Credit Acceptance Corp. v. Front*, 231 W.Va. 518, 745 S.E.2d 556 (2013). Because the circuit court's ruling denied Schumacher's motion to dismiss, we review the circuit court's order *de novo*. *See* Syllabus Point 4, *Ewing v. Bd. of Educ. of Cnty. of Summers*,

4

202 W.Va. 228, 503 S.E.2d 541 (1998) ("When a party, as part of an appeal from a final judgment, assigns as error a circuit court's denial of a motion to dismiss, the circuit court's disposition of the motion to dismiss will be reviewed *de novo*.").

### III.
### ANALYSIS

The issue we focus upon concerns the effect of a "delegation provision" buried within an arbitration clause in a larger contract. Our discussion of the issue is controlled by the Federal Arbitration Act ("the FAA") because the parties' contract reflects a transaction affecting interstate commerce.

Schumacher argues that the arbitration clause in its form contract contains a delegation provision. The provision says that "[t]he arbitrator(s) shall determine all issues regarding the arbitrability of the dispute." Schumacher argues that the trial court erred in finding the arbitration clause unconscionable, and should have enforced the delegation provision and referred all of the parties' claims about "arbitrability" to arbitration. As we discuss below, we disagree.

The primary substantive provision of the FAA is Section 2,[3] which we have interpreted as follows:

---

[3] 9 U.S.C. § 2 [1947] states:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the

(continued . . .)

5

> Under the Federal Arbitration Act, 9 U.S.C. § 2, a written provision to settle by arbitration a controversy arising out of a contract that evidences a transaction affecting interstate commerce is valid, irrevocable, and enforceable, unless the provision is found to be invalid, revocable or unenforceable upon a ground that exists at law or in equity for the revocation of any contract.

Syllabus Point 6, *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 724 S.E.2d 250 (2011) ("*Brown I*") (overruled on other grounds by *Marmet Health Care Center, Inc. v. Brown*, 132 S.Ct. 1201 (2012)).

The FAA recognizes that an agreement to arbitrate is a contract. The rights and liabilities of the parties are controlled by the state law of contracts. But if the parties have entered into a contract (which is valid under state law) to arbitrate a dispute, then the FAA requires courts to honor parties' expectations and compel arbitration.[4] Conversely, a party cannot be forced to submit to arbitration any dispute which he or she has not agreed to submit. A court may submit to arbitration "those disputes – but only

---

> whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

[4] Syllabus Point 7 of *Brown I*, 228 W.Va. at 656-57, 724 S.E.2d at 260-61, states this principle:

> The purpose of the Federal Arbitration Act, 9 U.S.C. § 2, is for courts to treat arbitration agreements like any other contract. The Act does not favor or elevate arbitration agreements to a level of importance above all other contracts; it simply ensures that private agreements to arbitrate are enforced according to their terms.

6

those disputes – that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 1924 (1995). *See also State ex rel. Richmond American Homes of West Virginia v. Sanders*, 228 W.Va. 125, 129, 717 S.E.2d 909, 913 (2011) (same).

### A. *Doctrine of Severability*

When a lawsuit is filed implicating an arbitration agreement, and a party to the agreement seeks to compel arbitration, the Supreme Court has interpreted the FAA to require application of the doctrine of "severability" or "separability." The gist of the doctrine is that an arbitration clause in a larger contract must be carved out, severed from the larger contract, and examined separately. The doctrine "treats the arbitration clause as if it is a separate contract from the contract containing the arbitration clause, that is, the 'container contract.'" Stephen J. Ware, *Arbitration Law's Separability Doctrine After Buckeye Check Cashing, Inc. v. Cardegna*, 8 Nevada L.J. 107, 109 (2007). Under the doctrine, arbitration clauses must be severed from the remainder of a contract, and must be tested separately under state contract law for validity and enforceability. In Syllabus Point 4 of *State ex rel. Richmond American Homes v. Sanders*, 228 W.Va. at 129, 717 S.E.2d at 913, we said in part:

> Under the Federal Arbitration Act, 9 U.S.C. § 2, and the doctrine of severability, only if a party to a contract explicitly challenges the enforceability of an arbitration clause within the contract, as opposed to generally challenging the contract as a whole, is a trial court permitted to consider the challenge to the arbitration clause.

7

However, we went on to hold that the FAA requires a severed arbitration clause to be evaluated under precepts of contract law applicable to any contract (not just arbitration agreements).[5] Hence, we concluded in Syllabus Point 4 of *Richmond American Homes* that:

> [T]he trial court may rely on general principles of state contract law in determining the enforceability of the arbitration clause. If necessary, the trial court may consider the context of the arbitration clause within the four corners of the contract, or consider any extrinsic evidence detailing the formation and use of the contract.

228 W.Va. at 129, 717 S.E.2d at 913. In other words, in determining if the severed arbitration clause is enforceable under generic principles of contract law, the trial court can look at other parts of the contract that relate to, support, or are otherwise entangled with the operation of the arbitration clause.

The United States Supreme Court has repeatedly interpreted the FAA to require questions about the validity of an arbitration provision to be severed and adjudicated separately from any other contractual question.[6] "'This doctrine is essentially

---

[5] Syllabus Point 8 of *Brown I*, 228 W.Va. at 657, 724 S.E.2d at 261, states this rule:

> A state statute, rule, or common-law doctrine, which targets arbitration provisions for disfavored treatment and which is not usually applied to other types of contract provisions, stands as an obstacle to the accomplishment and execution of the purposes and objectives of the Federal Arbitration Act, 9 U.S.C. § 2, and is preempted.

[6] The doctrine has its beginnings in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801 (1967). In *Prima Paint*, the plaintiff and

(continued . . .)

a pleading standard' that holds that 'only if a party explicitly challenges the enforceability of an arbitration clause within a contract is a court then permitted to consider challenges to the arbitration clause.'" *Richmond American Homes*, 228 W.Va. at 134, 717 S.E.2d at 918 (quoting *Brown I*, 228 W.Va. at 675, 724 S.E.2d at 279).

> The doctrine of severability means this: If a party challenges the enforceability of the entire contract (including the arbitration clause)—that is, the party does not sever the arbitration clause from the rest of the contract and make a

---

defendant entered into a consulting agreement that contained an arbitration clause. The plaintiff later sued the defendant, claiming the entire agreement was procured by fraud. The Supreme Court ruled that, under the FAA, the arbitration clause was presumed valid and enforceable unless the plaintiff proved that, separately from the rest of the consulting agreement, the clause had also been procured by fraud. Because the plaintiff did not sever the arbitration clause from the overall contract and challenge it exclusively, the Supreme Court ordered that the case be sent to arbitration. 388 U.S. at 401-404, 87 S.Ct. at 1804-1806.

The three dissenting justices in *Prima Paint* summarized the majority's interpretation of the FAA as creating a procedure that "compels a party to a contract containing a written arbitration provision to carry out his 'arbitration agreement' even though a court might, after a fair trial, hold the entire contract—including the arbitration agreement—void because of fraud in the inducement." 388 U.S. at 407, 87 S.Ct. at 1808 (Black, J., dissenting). They therefore labeled the *Prima Paint* decision "fantastic" because "Congress did not impose any such procedures in the Arbitration Act." *Id.*

The *Prima Paint* severability doctrine, which was a procedural rule that initially applied only to federal courts, became a mainstay of the Supreme Court's arbitration jurisprudence in 2006 when it was interpreted to be a substantive rule applicable in state courts. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46, 126 S.Ct. 1204, 1209 (2006) ("First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. . . . Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."). *See also*, *Preston v. Ferrer*, 552 U.S. 346, 353, 128 S.Ct. 978, 984 (2008) ("attacks on the validity of an entire contract, as distinct from attacks aimed at the arbitration clause alone, are within the arbitrator's ken.")

9

discrete challenge to the validity of the arbitration clause—
then the court is completely deprived of authority and only an
arbitrator can assess the validity of the contract, including the
validity of the arbitration clause.

*Brown I*, 228 W.Va. at 675, 724 S.E.2d at 279 (2011) (quotations and footnotes omitted).

Once the arbitration clause has been severed out for scrutiny, the FAA limits the trial court to considering only two threshold questions: (1) Under state contract law, is there a valid, irrevocable, and enforceable arbitration agreement between the parties? And, (2) Does the parties' dispute fall within the scope of the arbitration agreement? This second question must be weighed in view of the FAA being a "congressional declaration of a liberal federal policy favoring arbitration agreements," and establishing that "any doubts concerning the scope of arbitrable[7] issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941 (1983) (footnote added). As we said in Syllabus Point 2 of *State ex rel. TD Ameritrade, Inc. v. Kaufman*, 225 W.Va. 250, 692 S.E.2d 293 (2010):

When a trial court is required to rule upon a motion to
compel arbitration pursuant to the Federal Arbitration Act, 9
U.S.C. §§ 1–307 (2006), the authority of the trial court is
limited to determining the threshold issues of (1) whether a
valid arbitration agreement exists between the parties; and (2)
whether the claims averred by the plaintiff fall within the
substantive scope of that arbitration agreement.

---

[7] We discuss the ambiguous meaning of the word "arbitrable" later in this opinion.

10

With the concept of severance of arbitration clauses in mind, we now turn to the United States Supreme Court's jurisprudence concerning delegation provisions.

### B. *Delegation Provisions and Severability*

A "delegation provision" is a clause, within an agreement to arbitrate, which explicitly states that the parties to the agreement give the arbitrator the sole power to decide the validity, revocability or enforceability of the arbitration agreement under general state contract law. For example, in *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 66, 130 S.Ct. 2772, 2775 (2010) ("*Rent-A-Center*") the Supreme Court examined a delegation provision in an arbitration agreement that provided:

> The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable.

A delegation provision within an arbitration agreement reflects the principle that arbitration is purely a matter of contract. In their contract, the parties may agree that questions about the validity, revocability or enforceability of an arbitration agreement under state contract law will be delegated from a court to an arbitrator. "Because the parties are the masters of their collective fate, they can agree to arbitrate almost any dispute—even a dispute over whether the underlying dispute is subject to

11

arbitration." *Bruni v. Didion*, 160 Cal.App.4th 1272, 1286, 73 Cal.Rptr.3d 395, 407 (2008).[8]

The United States Supreme Court extended the severability doctrine to a delegation provision within an arbitration agreement in *Rent-A-Center*. The Supreme Court decided that a properly-drafted delegation provision is nothing more than a narrow "written provision" to "settle by arbitration" any question about the validity and enforceability of the arbitration agreement. 561 U.S. at 70, 130 S.Ct. at 2777-78 (quoting 9 U.S.C. § 2). Succinctly, a delegation clause is "a distinct mini-arbitration agreement divisible from the contract in which it resides – which just so happens also to be an arbitration agreement." 561 U.S. at 85, 130 S.Ct. at 2787 (Stevens, J., dissenting). Hence, "the FAA operates on this additional arbitration agreement just as it does on any other," and a delegation provision is valid under the FAA "save upon such grounds as exist at law or in equity for the revocation of any contract." 561 U.S. at 70, 130 S.Ct. at 2777-78 (quoting 9 U.S.C. § 2).

---

[8] Effective July 1, 2015, in Senate Bill 37, the Legislature adopted the Revised Uniform Arbitration Act, *W.Va. Code* §§ 55-10-1 to -33. In *W.Va. Code* § 55-10-8(c), the Act provides that every "decision as to whether the arbitration agreement is enforceable shall be made by a court of competent jurisdiction" regardless of what the parties may have otherwise agreed. We note that, as to contracts affecting interstate commerce, Section 8(c) conflicts with the Supreme Court's holdings that any state statute which impedes an arbitration agreement and targets it for treatment not usually applied to other kinds of contracts is preempted by the FAA. *See* Syllabus Point 8, *Brown I*, 228 W.Va. at 657, 724 S.E.2d at 261; *Southland Corp. v. Keating*, 465 U.S. 1, 16, 104 S.Ct. 852, 861 (1984) (the FAA "foreclose[s] state legislative attempts to undercut the enforceability of arbitration agreements."). Under the holdings of the United States Supreme Court, this provision in Senate Bill 37 is preempted by the FAA if the arbitration agreement contains a valid and enforceable delegation clause.

*Rent-A-Center* stands for the proposition that a delegation provision is a mini-arbitration agreement divisible from both the broader arbitration clause and the even broader contract in which the delegation provision and arbitration clause are found. Therefore, a party must specifically object to the delegation provision in order for a court to consider the challenge. A party resisting delegation to an arbitrator of any question about the enforceability of an arbitration agreement must challenge the delegation provision exclusively.

The take-away rule from *Rent-A-Center* is this: under the FAA and the doctrine of severability, where a delegation provision in a written arbitration agreement gives to an arbitrator the authority to determine whether the arbitration agreement is valid, irrevocable or enforceable under general principles of state contract law, a trial court is precluded from deciding a party's state contract law challenge to the arbitration agreement. When an arbitration agreement contains a delegation provision, the trial court may only consider a challenge that is directed at the validity, revocability or enforceability of the delegation provision itself.

We recognize that this rule seems absurd, "something akin to Russian nesting dolls," and suggests "an infinite severability rule" that is "difficult for any lawyer – or any person – to accept, but this is the law[.]" 561 U.S. at 85-87, 130 S.Ct. at 2787 (Stevens, J., dissenting).[9] It is an ivory-tower interpretation of the FAA "that is as

---

[9] A leading arbitration scholar called the rule "intricate and recondite to a degree that seems wholly unnecessary," such that it will "place too great of a strain on minds not prepared to deal with it;" "a tad oversubtle for sensible application;" and

(continued . . .)

13

dubious in principle as it is senseless in practice." *Young v. United Parcel Service, Inc.*, 135 S.Ct. 1338, 1361 (2015) (Scalia, J., dissenting). But unless or until the United States Supreme Court alters its interpretation of the FAA, we are constrained by that Court's rulings.

The facts in *Rent-A-Center* demonstrate the application of this delegation provision rubric. An employee, Jackson, filed an employment discrimination suit against his employer, Rent-A-Center. The employer filed a motion to compel arbitration under an arbitration agreement. Furthermore, the employer asserted that the agreement had a provision delegating to the arbitrator "exclusive authority to resolve any dispute relating to the . . . enforceability" of the arbitration agreement. *Rent-A-Center*, 561 U.S. at 66, 130 S.Ct. at 2775. The employee did not apply the doctrine of severability, and opposed the motion to compel on the ground that the entire employment contract, including the arbitration agreement, was unconscionable and unenforceable. The employee did not challenge the arbitration agreement separate from the overall contract, and did not challenge the delegation provision separate from the arbitration agreement.

The Supreme Court determined that "unless Jackson challenged the delegation provision specifically, we must treat it as valid [under the FAA] . . . and must enforce it . . . leaving any challenge to the validity of the [Arbitration] Agreement as a whole for the arbitrator." 561 U.S. at 72, 130 S.Ct. at 2779. Jackson addressed the

"carving up the available universe pretty fine, and requires line drawing that may seem artificial to the vanishing point." Alan Scott Rau, *Arbitral Power and the Limits of Contract: The New Trilogy*, 22 Am. Rev. Int'l Arb. at 517-19.

14

"validity of the contract as a whole," but failed to "even mention the delegation provision" in his arguments to the trial court. *Id.* On these facts, the Supreme Court concluded that the delegation provision was enforceable, and that the trial court should have referred Jackson's arguments about the unconscionability of the arbitration agreement to an arbitrator.

## C. *Challenging a Delegation Provision*

To be clear, it is still possible to oppose enforcement of a delegation provision. The FAA does not require all claims to be sent to arbitration merely because there is a delegation provision. As the Supreme Court stated, merely because delegation clauses and "agreements to arbitrate are severable does not mean that they are unassailable." 561 U.S. at 71, 130 S.Ct. at 2778. Severance is merely a speedbump on the road to deliberating the enforceability of the provision.

A party seeking to enforce an arbitration clause, or a party resisting arbitration, must begin any argument with the recognition that arbitration is purely a matter of contract. If a party seeks to establish the validity and enforceability of a delegation provision in an arbitration clause, then there must first be "clear and unmistakable evidence" that the parties agreed to send questions about the enforceability of the arbitration clause to the arbitrator.

In the context of whether the parties have agreed to arbitrate the merits of a dispute – that is, the "arbitrability" of a question – the United States Supreme Court said, "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is

15

'clea[r] and unmistakabl[e]' evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. at 944, 115 S.Ct. at 1924. Likewise, this Court has found that "parties are only bound to arbitrate those issues that by clear and unmistakable writing they have agreed to arbitrate," and that an "agreement to arbitrate will not be extended by construction or implication." Syllabus Point 10, *Brown I*, 228 W.Va. at 657, 724 S.E.2d at 261. The "clear and unmistakable" test reflects a "heightened standard" of proof of the parties' "manifestation of intent." *Rent-A-Center,* 561 U.S. at 70 n.1, 130 S.Ct. at 2778 n.1. The heightened standard was adopted

> because the question of who would decide the unconscionability of an arbitration provision is not one that the parties would likely focus upon in contracting, and the default expectancy is that the court would decide the matter. Thus, the Supreme Court has decreed, a contract's silence or ambiguity about the arbitrator's power in this regard cannot satisfy the clear and unmistakable evidence standard.

*Ajamian v. CantorCO2e, L.P.*, 203 Cal.App.4th 771, 782, 137 Cal.Rptr.3d 773, 782 (2012) (citations omitted).

Questions about the validity, revocability, and enforceability of a provision delegating a problem with the enforceability or scope of an arbitration clause are resolved by looking to state contract law. "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options*, 514 U.S. at 944, 115 S.Ct. at 1924. "Nothing in the Federal Arbitration Act, 9 U.S.C. § 2, overrides normal rules of contract interpretation. Generally applicable contract defenses—such as laches, estoppel, waiver, fraud, duress, or unconscionability—may be applied to

16

invalidate an arbitration agreement." Syllabus Point 9, *Brown I*, 228 W.Va. at 657, 724 S.E.2d at 261. State contract law requires a trial court examining the enforceability of a contract provision to weigh the challenged provision in context, and consider other parts of the contract that relate to, support, or are otherwise intertwined with the operation of the challenged provision. *Richmond American Homes*, 228 W.Va. at 135, 717 S.E.2d at 919. Those same state-law contract defenses principles may be employed to invalidate a severed delegation provision within an arbitration agreement.

To summarize, when a party seeks to enforce a delegation provision in an arbitration agreement against an opposing party, under the FAA there are two prerequisites for the delegation provision to be effective. First, the language of the delegation provision must reflect a clear and unmistakable intent by the parties to delegate state contract law questions about the validity, revocability, or enforceability of the arbitration agreement to an arbitrator. Second, the delegation provision must itself not be invalid, revocable or unenforceable under state contract law. Typical contract defenses such as laches, estoppel, waiver, fraud, duress, or unconscionability may be asserted.[10] Under general principles of state contract law, the trial court may consider the

---

[10] To be clear, this list is not exclusive. Misrepresentation, duress, mutuality of assent, undue influence, or lack of capacity, if the contract defense exists under general common law principles, then it may be asserted to counter the claim that a delegation provision binds the parties. Even lack of consideration is a defense. *But see Kirby v. Lion Enterprises, Inc.*, 233 W.Va. 159, 164-65, 756 S.E.2d 493, 498-99 (2014) (clarifying that the focus should not be on whether the arbitration clause was supported by separate consideration, but whether the entire contract was supported by consideration); Syllabus Point 6, *Dan Ryan Builders, Inc. v. Nelson*, 230 W.Va. 281, 737 S.E.2d 550 (2012) ("So long as the overall contract is supported by sufficient

(continued . . .)

17

context of the delegation provision within the four corners of the contract. In other words, in determining if the delegation provision is enforceable under generic principles of contract law, the trial court can look at other parts of the contract that relate to, support, or are otherwise entangled with the operation of the delegation provision.

### D. *Applying the Rules*

We now turn to the arbitration clause in the parties' contract, and examine the clause that Schumacher asserts is a delegation provision. Our standard of review in this case is *de novo*. Syllabus Point 4, *Ewing v. Bd. of Educ. of Cnty. of Summers*, 202 W.Va. 228, 503 S.E.2d 541 (1998). We therefore give the arbitration clause and the delegation provision a plenary review, and apply the same legal standards to that review as the circuit court.

Schumacher's arbitration clause contained a provision assigning to an arbitrator "all issues regarding the *arbitrability* of the dispute." "Regrettably, 'arbitrability' is an ambiguous term that can encompass multiple distinct concepts." *Bruni v. Didion*, 160 Cal.App.4th at 1286, 73 Cal.Rptr.3d at 407. *See also GGIS Ins. Servs., Inc. v. Lincoln Gen. Ins. Co.*, 773 F.Supp.2d 490, 504 (M.D. Pa. 2011) ("The term "arbitrability" is, by[] itself, ambiguous."). The term "arbitrability" is generally seen "in

consideration, there is no requirement of consideration for each promise within the contract . . . in order for a contract to be formed."). The nutshell rule is that, whatever defense is asserted, the defense must be aimed at showing why the delegation provision is unenforceable.

18

the sense of the *scope* of the arbitration provisions," *Bruni*, 160 Cal.App.4[th] at 1286, 73 Cal.Rptr.3d at 407, and asks whether a particular dispute is subject to the parties' arbitration agreement.  In *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 123 S.Ct. 588 (2002), the Supreme Court grappled with the vagueness of the word "arbitrability," and resolved that legally it has a narrow meaning:

> Linguistically speaking, one might call any potentially dispositive gateway question a "question of arbitrability," for its answer will determine whether the underlying controversy will proceed to arbitration on the merits. The Court's case law, however, makes clear that . . . the phrase "question of arbitrability" has a far more limited scope. . . .
>
> Thus, a gateway dispute about whether the parties are bound by a given arbitration clause raises a "question of arbitrability" for a court to decide.

537 U.S. at 83-84, 123 S.Ct. at 591-92.[11]

After carefully examining Schumacher's delegation provision and applying our holdings above, we find it does not "clearly and unmistakably" confer authority to the arbitrator to decide the gateway questions regarding the validity, revocability, and enforceability of the arbitration clause.  The provision refers to the arbitrator only questions about "arbitrability," a nebulous term that has legally been limited to mean questions about whether a particular dispute is within the scope of an arbitration

---

[11] *See also* Douglas H. Yarn, Gregory Todd Jones, *Georgia Alternative Dispute Resolution*, § 9:11 (2014) ("'Arbitrability' is an ambiguous term referring generally to the jurisdiction of the arbitrator.  In keeping with the voluntary, contractual nature of arbitration, matters parties agreed to arbitrate are within the arbitral jurisdiction (arbitrable) while matters they did not agree to arbitrate are without (nonarbitrable).").

19

agreement. "Arbitrability" in this case would mean the ultimate issue in dispute – namely, whether the house built by Schumacher for the plaintiffs was defective. We see nothing in the arbitration clause that restricts to the arbitrator questions concerning its own validity, revocability, or enforceability; the arbitration clause is silent as to these threshold inquiries. Because the delegation provision does not meet the first prerequisite of our test, it cannot and should not be enforced.

Two final issues trouble us about the delegation provision.

First, we are troubled by the way Schumacher raised the delegation provision to the circuit court. Neither Schumacher's motion to compel arbitration nor its memorandum of law in support of the motion mentioned the delegation provision, let alone sought its enforcement. The delegation provision was not raised as an issue until the motion was orally argued to the circuit court seven months after the plaintiffs filed suit. The plaintiffs were never put on notice that, in their opposition to the motion to compel, they might need to address the enforceability of the delegation provision. By its actions, Schumacher both ambushed the plaintiffs and failed to meet the heightened "clear and unmistakeable" test."[12]

---

[12] In somewhat similar cases, parties have been found to have waived, abandoned, or failed to establish a right to enforcement of an arbitration clause. *See*, *e.g.*, *In re Checking Account Overdraft Litig.*, 754 F.3d 1290, 1298 (11th Cir. 2014) (party seeking to compel arbitration "waived its delegation clause argument when it waited to raise the issue until after it had asked the district court to decide arbitrability—and lost"); *Mercadante v. Xe Servs.*, LLC, 864 F. Supp. 2d 54 (D.D.C. 2012) (defendant could not raise for first time in their reply brief claim that arbitrator had exclusive authority to determine validity of contract); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*, 838 F. Supp. 2d 967 (C.D. Cal. 2012)

(continued . . .)

20

Second, we are troubled that the plaintiff-homeowners violated the *Rules of Appellate Procedure* in their brief to this Court. Rule 10(d) of the *Rules of Appellate Procedure* [2010] required the plaintiffs (as respondents) to specifically address each of Schumacher's assignments of error. Rule 10(d) states, in pertinent part:

> Unless otherwise provided by the Court, the argument section of the respondent's brief must specifically respond to each assignment of error, to the fullest extent possible. If the respondent's brief fails to respond to an assignment of error, the Court will assume that the respondent agrees with the petitioner's view of the issue.

The petitioner's brief by Schumacher clearly delineated and argued seven assignments of error. The plaintiffs' brief in response is nothing more than a generic rehash of the plaintiffs' brief to the circuit court. The plaintiffs' appellate brief failed to specifically

---

(because Toyota litigated case for 11 months before seeking enforcement of delegation provision, it waived right to arbitration); *Hartley v. Superior Court*, 196 Cal.App.4th 1249, 1260, 127 Cal.Rptr.3d 174, 182-83 (2011) (moving party seeking arbitration did not raise delegation provision until its reply brief, failing to put non-moving party on notice and thereby failing its "burden to meet the heightened 'clear and unmistakable' test"); *Katz v. Anheuser-Busch, Inc.*, 347 S.W.3d 533, 540 (Mo. Ct. App. 2011) (party seeking to compel arbitration failed to raise delegation provision until after trial court denied motion to compel arbitration, thereby waiving issue for appeal); *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1213 (11th Cir. 2011) (it is invited error for a party to not raise a delegation provision until after a trial court has ruled on the arbitrability of a suit); *M. Homes, LLC v. Southern Structural, Inc.*, 281 Ga. App. 380, 383, 636 S.E.2d 99, 101 (2006) (a party that fails to assert a delegation provision "may waive an agreement to arbitrate by taking actions that are 'inconsistent with the right of arbitration.'").

The right to arbitration, like any other contract right, can be waived. "To demonstrate waiver of the right to arbitrate, a party must show: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *U.S. v. Park Place Associates, Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009) (citation omitted).

21

respond to *any* of Schumacher's seven assignments of error; importantly, the brief makes no mention of Schumacher's assertion of the delegation provision. A respondent who files a brief that fails to respond to each of the petitioner's assignments of error does so at their peril. On these briefs, this Court would be within its bounds to assume the plaintiffs' brief conceded the correctness of Schumacher's arguments. In the exercise of our discretion, we decline to do so in this case.

In summary, we find that the circuit court did not err in its failure to enforce Schumacher's so-called delegation provision. Even assuming it was properly raised to the circuit court, the delegation provision does not reflect a clear and unmistakable intent by the parties to delegate state contract law questions about the validity, revocability, or enforceability of the arbitration clause to an arbitrator.[13] Therefore, the circuit court was

---

[13] Schumacher raises six other issues on appeal that we find have little merit, and therefore decline to address. First, Schumacher asserts the circuit court erred in relying on West Virginia law when the contract stated it was to be construed under Ohio law. However, Schumacher concedes in its brief that "defenses to contracts are similar in Ohio as in West Virginia." Our research confirms this, and we find no error in applying West Virginia's substantive contract law to find the arbitration clause unconscionable. Second, Schumacher incorrectly claims the circuit court failed to apply the severability doctrine – an argument belied by the court's conclusion that only the arbitration clause (read in the context of the overall contract) was unconscionable. The third, fourth, fifth and sixth arguments by Schumacher pertain to the circuit court's findings of unconscionability, based partly on the finding that the arbitration clause requires the plaintiffs to arbitrate all claims but allows the contractor to pursue mechanic's liens in state court. This provision of the contract is of no small moment: the only reason a contractor is likely to go to court against a homeowner is to get paid for his/her work. But this provision simultaneously prevents the homeowner from going to court to dispute paying the contractor for that same work. Whether the contractor charged too much, charged for disputed add-ons, or shouldn't be paid for poor or incomplete workmanship, the homeowner must seek arbitration. On this record, we cannot say the circuit court erred. *See Kirby v. Lion Enterprises, Inc.*, 233 W.Va. 159,

(continued . . .)

22

correct in deciding that the arbitration provision was unenforceable under West Virginia contract law.

## IV.
## CONCLUSION

We find no reversible error in the circuit court's determination that the arbitration clause in Schumacher's contract was unenforceable against the plaintiffs. We therefore affirm the circuit court's March 6, 2014, order refusing to compel arbitration.

Affirmed.

---

168, 756 S.E.2d 493, 502 (2014) (Ketchum, J., concurring) (construction contract allowed contractor to pursue some claims in court, while requiring home owner to arbitrate all claims; the arbitration "provision lacks any modicum of bilaterality or mutuality of obligation. A contract that lacks mutual reciprocal obligations (for instance, a contract which requires the weaker party to arbitrate any claims he or she may have, but permits the stronger party to seek redress through the courts) may be so one-sided and unreasonably unfair to one party that it is unconscionable."; *Dan Ryan Builders, Inc. v. Nelson*, 230 W.Va. 281, 290, 737 S.E.2d 550, 559 (2012) ("[I]t is well-settled that a contract which requires the weaker party to arbitrate any claims he or she may have, but permits the stronger party to seek redress through the courts, may be found to be substantively unconscionable.").

23