**IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA**

September 2015 Term

_____

No. 14-1210

_____

**FILED**

**November 18, 2015**

**released at 3:00 p.m.**
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**GEOLOGICAL ASSESSMENT & LEASING,**
**and WILLIAM CAPOUILLEZ,**
**Defendants below, Petitioners**

**v.**

**MICHAEL C. O'HARA and**
**DIERDRE J. O'HARA,**
**Plaintiffs below, Respondents**

_____

Appeal from the Circuit Court of Ohio County
The Honorable Martin J. Gaughan, Judge
Civil Action No. 13-C-246

**REVERSED AND REMANDED**

_____

**AND**

_____

No. 14-1211

_____

**GEOLOGICAL ASSESSMENT & LEASING,**
**and WILLIAM CAPOUILLEZ,**
**Defendants below, Petitioners**

**v.**

**CHARLES R. CORBIN, JR. and**
**MARGARET L. CORBIN, husband and wife;**

**MARGARET E. CORBIN, widow; and
JAMES E. CORBIN, by and through his
guardian and conservator, CHARLES R. CORBIN, JR.,
Plaintiffs below, Respondents**

_____

**Appeal from the Circuit Court of Brooke County
The Honorable Martin J. Gaughan, Judge
Civil Action No. 14-C-36**

**REVERSED AND REMANDED**

_____

**AND**

_____

**No. 14-1286**

_____

**GEOLOGICAL ASSESSMENT & LEASING,
and WILLIAM CAPOUILLEZ,
Defendants below, Petitioners**

**v.**

**BETH NELSON FISH f/k/a BETH A. MARTIN NELSON,
MICHAEL WAYNE MARTIN,
and WILLIAM MARTIN, SR.
Plaintiffs below, Respondents**

_____

**Appeal from the Circuit Court of Ohio County
The Honorable Martin J. Gaughan, Judge
Civil Action No. 13-C-248**

**REVERSED AND REMANDED**

_____

**Submitted: October 7, 2015**
**Filed: November 18, 2015**

**Robert C. James, Esq.**
**Flaherty Sensabaugh Bonasso PLLC**
**Wheeling, West Virginia**
**Counsel for the Petitioners**

**Jonathan E. Turak, Esq.**
**Gold, Khourey & Turak**
**Moundsville, West Virginia**
**Daniel J. Guida, Esq.**
**Guida Law Offices**
**Weirton, West Virginia**
**Eric Gordon, Esq.**
**Berry, Kessler, Crutchfield,**
**Taylor and Gordon**
**Moundsville, West Virginia**
**Counsel for the Respondents**

**JUSTICE KETCHUM delivered the Opinion of the Court.**

**JUSTICE BENJAMIN, deeming himself disqualified, did not participate in the decision of this case.**

SYLLABUS BY THE COURT

1.     "An order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine." Syllabus Point 1, *Credit Acceptance Corp. v. Front*, 231 W.Va. 518, 745 S.E.2d 556 (2013).

2.     "Under the Federal Arbitration Act, 9 U.S.C. § 2, a written provision to settle by arbitration a controversy arising out of a contract that evidences a transaction affecting interstate commerce is valid, irrevocable, and enforceable, unless the provision is found to be invalid, revocable or unenforceable upon a ground that exists at law or in equity for the revocation of any contract."  Syllabus Point 6, *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 656, 724 S.E.2d 250, 260 (2011), reversed on other grounds by *Marmet Health Care Ctr., Inc. v. Brown*, 132 S.Ct. 1201 (2012).

3.     "A state statute, rule, or common-law doctrine, which targets arbitration provisions for disfavored treatment and which is not usually applied to other types of contract provisions, stands as an obstacle to the accomplishment and execution of the purposes and objectives of the Federal Arbitration Act, 9 U.S.C. § 2, and is preempted."  Syllabus Point 8, *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 656, 724 S.E.2d 250, 260 (2011), reversed on other grounds by *Marmet Health Care Ctr., Inc. v. Brown*, 132 S.Ct. 1201 (2012).

Justice Ketchum:

In these three consolidated appeals, we examine a circuit court's ruling that a plaintiff's claim that a defendant engaged in the unauthorized practice of law can never, as a matter of law, be referred to arbitration. This Court has previously held that any state-based rule that prohibits outright the arbitration of a particular type of claim is preempted by the Federal Arbitration Act. Accordingly, we reverse the circuit court's ruling.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

Defendant William Capouillez is a geologist who runs a small company, defendant Geological Assessment & Leasing.[1] Mr. Capouillez is not a lawyer, and no one in his company is licensed as a lawyer. Beginning in 2001, Mr. Capouillez represented landowners in their lease negotiations with companies who sought to lease the owner's land to drill for oil and gas. Sometimes Mr. Capouillez would sign a representation contract with the landowner, sometimes not. The representation contract was for a period of six months; after that, Mr. Capouillez said he destroyed the contract.

---

[1] The facts concerning Mr. Capouillez have partly been gleaned from a companion case, *Chesapeake Appalachia, L.L.C. v. Hickman*, ___ W.Va. ___, ___ S.E.2d ___ (No. 14-0921, November 18, 2015). In that separate case (which similarly involves three appeals consolidated for consideration), a landowner brought suit alleging that Mr. Capouillez (and his company) had been negligent, incompetent, and breached a fiduciary duty in the negotiation and execution of two oil and gas leases. As in the instant case, Mr. Capouillez asserted he was entitled to protection under the arbitration clause in the leases.

The record is clear that there was no arbitration provision in the representation contracts involving the landowners in this appeal.

It appears that Mr. Capouillez would seek out and gather a group of landowners in a locality together under his representation. He would then seek lease offers for that group from different oil and gas companies. It was Mr. Capouillez's experience that groups of landowners working together negotiated more favorable oil and gas leases than landowners working alone. Mr. Capouillez would then invite those landowners to a meeting with an oil and gas company representative to sign the lease.

No landowner paid Mr. Capouillez directly for his assistance in negotiating the lease. Instead, the lease negotiated by Mr. Capouillez would contain provisions splitting any bonuses, rentals and royalties paid by the oil and gas company between the landowner and Mr. Capouillez. The lease would require the oil and gas company to pay Mr. Capouillez directly.

Furthermore, the lease would specifically identify Mr. Capouillez (or his company) as a "consultant" for the landowner. The lease would also contain language specifically preventing the landowner and the oil and gas company from modifying the lease to Mr. Capouillez's detriment.[2] At the end of the lease, between signature lines

---

[2] For instance, one lease in the record states:

> WHEREAS, Lessor has contracted with Geological Assessment & Leasing . . . to act as Lessor's consultant and representative in the negotiation, execution, and performance of this Agreement, hereinafter designated "Consultant"; and

(continued . . .)

2

designated for the lessor and for the lessee, Mr. Capouillez would sign on a line designated "Consultant."

This appeal involves three different leases negotiated by Mr. Capouillez between the plaintiff-landowners and an oil and gas company, Great Lakes Energy Partners, LLC (now known as Range Resources-Appalachia, LLC, and hereinafter called "Range Resources"). The first lease (in case 14-1210) was signed on June 6, 2006 by plaintiffs Michael C. O'Hara and Dierdre J. O'Hara, for a 44.94 acre parcel in Ohio County. The second lease (in case 14-1211) was signed on March 7, 2006, by Charles R. Corbin, Jr., Margaret L. Corbin, James E. Corbin, and Margaret E. Corbin, for a 201.78 acre parcel in Brooke County. The third lease (in case 14-1286) was signed on March 14, 2006, by Beth A. Martin Nelson (now known as Beth Nelson Fish), Michael W. Martin,

---

WHEREAS, Lessor's contract with Consultant allows for a certain portion of Lessor's bonus rental payment, delay rental payments and/or royalty payments to be paid directly to Consultant.

NOW, THEREFORE, in consideration of the bonus rental payment of twenty five dollars ($25.00) per net acre, paid proportionally to the Lessor in the amount of twenty-two and fifty one-hundredths dollars ($22.50) per net acre and Consultant in the amount of two and fifty one-hundredths dollars ($2.50) per net acre . . . Lessor does hereby grant, demise, lease, and let, exclusively unto Lessee the Leased Premises . . .

28.4 Consultant reserves the right to approve in writing any proposed revisions to this Agreement which directly or indirectly affects Consultants delay rental and/or royalty payments and/or obligations of Lessor or Lessee to the Consultant as contained herein.

3

and William D. Martin, and involved a 33.803 acre parcel in Ohio County. Mr. Capouillez signed each of the three leases as a "consultant" for the landowners.

Each of the three leases with Range Resources contains an arbitration clause. The clause provides that "[a]ny controversy or claim arising out of or relating to this Lease . . . shall be ascertained and settled" by arbitration.[3]

Each of the three leases engendered a different lawsuit against Mr. Capouillez. Two lawsuits were filed in Ohio County, the third in Brooke County, but all three suits were overseen by the same circuit judge. In all of the cases, the plaintiffs alleged that the character of the services provided by Mr. Capouillez constituted the unauthorized practice of law. The plaintiffs generally alleged that Mr. Capouillez instructed and advised the plaintiffs regarding their rights and obligations under their lease; offered advice to the plaintiffs about their legal ownership interests and the meaning of contract language; prepared, drafted and developed documents for the

---

[3] The arbitration clause in Range Resources lease provides:

29.1 Any controversy or claim arising out of or relating to this Lease, or the breach thereof shall be ascertained and settled by three (3) disinterested arbitrators in accordance with the rules of the American Arbitration Association, one thereof to be appointed by the Lessor, one by the Lessee, and the third by the two (2) so appointed aforesaid, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Arbitration proceedings hereunder shall be conducted at the county seat or the county where the lease or action occurred which is cause for the arbitration, or such other place as the parties to such arbitration shall all mutually agree upon. The cost of such arbitration will be borne equally by the parties.

4

plaintiffs that required legal knowledge beyond the skill of an ordinary layman; and suggested and gave advice on various lease provisions, many of which were not contained in the form lease used by Range Resources.

In their lawsuits, the plaintiffs sought a declaration that Mr. Capouillez's actions constituted the unauthorized practice of law in West Virginia.[4] The plaintiffs asked the circuit court to hold Mr. Capouillez's representation contract for "consulting services" to be unenforceable. More importantly, the plaintiffs sought a declaration that all of the fees charged by Mr. Capouillez be found unfair, unreasonable, and against public policy. The plaintiffs demanded that the provisions in the leases allowing Mr. Capouillez to receive a portion of any bonuses, rentals or royalty payments to the plaintiffs be found void, and that any fees paid by Range Resources to Mr. Capouillez as

---

[4] We approved of a cause of action for the unlawful and unauthorized practice of law in Syllabus Point 1 of *McMahon v. Advanced Title Servs. Co. of W.Va.*, 216 W.Va. 413, 607 S.E.2d 519 (2004):

> A party who has suffered or may likely suffer a legally cognizable injury, wrong, or other actionable violation of his or her personal legal rights and interests as a proximate result of the unlawful and unauthorized practice of law by another has standing to assert a claim alleging such unlawful and unauthorized practice and seeking relief appropriate to the actual or threatened injury, wrong, or violation.

*See also Brammer v. Taylor*, 175 W.Va. 728, 734, 338 S.E.2d 207, 213 (1985) (unauthorized practice of law in preparation of codicil to will is *prima facie* negligence); *W.Va. Code* § 30-2-4 [1921] (making it a crime for a non-lawyer to hold one's self out as a lawyer).

5

a result of his unauthorized practice of law be disgorged and returned to the plaintiffs to deter similar future conduct.

Mr. Capouillez subsequently filed motions to dismiss the plaintiffs' lawsuits, and seeking to compel the plaintiffs to participate in arbitration pursuant to the arbitration clause in each lease. In their response to the motions, the plaintiffs directly challenged the arbitration clause as void upon existing state law grounds for the revocation of any contract, namely that the arbitration clause was contrary to public policy because it was procured through the unauthorized practice of law.[5]

The circuit court entered an identical order in all three suits. The circuit court determined that Mr. Capouillez was a signatory to each lease, and that it was the understanding and mutual objective of the parties that Mr. Capouillez would benefit from the lease. Accordingly, the circuit court concluded that Mr. Capouillez "can enforce the arbitration clause of the lease as a signatory to the lease."

---

[5] The plaintiffs also asserted that the parties' dispute involved Mr. Capouillez's representation contract, not the lease, and so the lease provisions were not implicated by their claims. Further, the plaintiffs asserted that while Mr. Capouillez is mentioned in the lease and signed the lease as "consultant," he is not mentioned in the arbitration clause. Only the lessor-plaintiffs and lessee oil and gas company are identified. Hence, the plaintiffs asserted that Mr. Capouillez was not intended to be encompassed by each lease's arbitration clause. The plaintiffs reassert these arguments on appeal, but we decline to consider them.

The plaintiffs also assert that the circuit court failed to consider that one plaintiff, Charles E. Corbin, may not have had the mental capacity to agree to arbitration. This question is better addressed by the circuit court on remand.

6

The circuit court next determined that the plaintiffs' lawsuits sought to void bonus, rental and royalty payments to Mr. Capouillez that were guaranteed by the terms of each lease. Because the plaintiffs' claims implicated the terms of each lease, the court court found the plaintiffs' allegations fell within the substantive scope of the arbitration clause.

The circuit court noted it was "aware of its obligation to enforce a valid arbitration clause," but did not pass judgment on the validity of the arbitration provisions in the three leases. Instead, the circuit court determined that a claim alleging the unauthorized practice of law simply could not be submitted to arbitration. Because the judicial department of the government has the constitutional and inherent power to define, supervise, regulate and control the practice of law, the circuit court determined that nothing in an arbitration clause or the Federal Arbitration Act ("the FAA") could deprive a court of that power. *See* Syllabus Point 8, *W.Va. State Bar v. Earley*, 144 W.Va. 504, 109 S.E.2d 420 (1959) ("The judicial department of the government has the inherent power, independent of any statute, to inquire into the conduct of a natural person, a lay agency, or a corporation to determine whether he or it is usurping the function of an officer of a court and illegally engaging in the practice of law and to put an end to such unauthorized practice wherever it is found to exist.").

7

Mr. Capouillez now appeals the three orders of the circuit court.[6] We consolidated the three appeals for joint argument and consideration.

## II.
## STANDARD OF REVIEW

"An order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine." Syllabus Point 1, *Credit Acceptance Corp. v. Front*, 231 W.Va. 518, 745 S.E.2d 556 (2013). Because the circuit court's ruling denied Mr. Capouillez's motion to dismiss, we review the circuit court's order *de novo*. See Syllabus Point 4, *Ewing v. Bd. of Educ. of Cnty. of Summers*, 202 W.Va. 228, 503 S.E.2d 541 (1998) ("When a party, as part of an appeal from a final judgment, assigns as error a circuit court's denial of a motion to dismiss, the circuit court's disposition of the motion to dismiss will be reviewed *de novo*.").

## III.
## ANALYSIS

Mr. Capouillez appeals arguing that the circuit court erred when it refused to refer the plaintiffs' cases to arbitration. Because the parties do not dispute that their leases reflect transactions affecting interstate commerce, our discussion is controlled by the Federal Arbitration Act ("the FAA").

---

[6] As to the O'Hara lease (appeal number 14-1210), the circuit court entered its order on October 17, 2014. On the Corbin lease (appeal number 14-1211), the circuit court entered its order on October 20, 2014. Finally, on the Martin lease (appeal number 14-1286), the circuit court's order was entered on November 20, 2014.

8

The primary substantive provision of the FAA is Section 2,[7] which we have interpreted as follows:

> Under the Federal Arbitration Act, 9 U.S.C. § 2, a written provision to settle by arbitration a controversy arising out of a contract that evidences a transaction affecting interstate commerce is valid, irrevocable, and enforceable, unless the provision is found to be invalid, revocable or unenforceable *upon a ground that exists at law or in equity for the revocation of any contract.*

Syllabus Point 6, *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 724 S.E.2d 250 (2011) ("*Brown I* ") (emphasis added).

The FAA recognizes that an agreement to arbitrate is a contract. The rights and liabilities of the parties are controlled by the state law of contracts. But if the parties have entered into a contract (which is valid under state law) to arbitrate a dispute, then the FAA requires courts to honor parties' expectations and compel arbitration. *See State ex rel. Johnson Controls, Inc. v. Tucker*, 229 W.Va. 486, 494, 729 S.E.2d 808, 816 (2012) (Congress adopted the FAA to make arbitration agreements as enforceable as other contracts, but not more so).

---

[7] 9 U.S.C. § 2 [1947] provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

The controlling language of Section 2 of the FAA is the last clause. It provides that a circuit court may not avoid enforcement of an arbitration clause, "save upon such grounds as exist at law or in equity for the revocation *of any contract*." 9 U.S.C. § 2 (emphasis added). Under this language, "A state statute, rule, or common-law doctrine, which targets arbitration provisions for disfavored treatment and which is not usually applied to other types of contract provisions, stands as an obstacle to the accomplishment and execution of the purposes and objectives of the Federal Arbitration Act, 9 U.S.C. § 2, and is preempted." Syllabus Point 8, *Brown I*, 228 W.Va. at 657, 724 S.E.2d at 261. As the United States Supreme Court has bluntly interpreted this language, "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *AT & T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1747 (2011).

In the instant case, the circuit court targeted the parties' arbitration agreement for disfavored treatment. The circuit court implied that the question of whether or not the arbitration clause was enforceable under general principles of state contract law was irrelevant. The circuit court simply held that West Virginia state law outright prohibits the arbitration of claims involving the unauthorized practice of law. As the United States Supreme Court has dictated, our analysis is straightforward: the circuit court's conflicting rule is displaced and preempted by the FAA.

10

## IV.
## CONCLUSION

The circuit court's orders must be reversed, and the cases remanded for further proceedings. On remand, the circuit court must address the plaintiffs' other direct, discrete challenges to the arbitration clauses in each lease under West Virginia's general principles of contract law. Nothing in this opinion should be construed as precluding the circuit court from weighing whether the arbitration clauses are unenforceable under general principles of state law, "such as laches, estoppel, waiver, fraud, duress, or unconscionability." Syllabus Point 9, *Brown I*, 228 W.Va. at 657, 724 S.E.2d at 261. "To be clear, this list is not exclusive. Misrepresentation, duress, mutuality of assent, undue influence, or lack of capacity, if the contract defense exists under general common law principles, then it may be asserted to counter the claim that a . . . provision binds the parties. Even lack of consideration is a defense." *Schumacher Homes of Circleville, Inc. v. Spencer*, 235 W.Va. 335, 346 n.10, 774 S.E.2d 1, 12 n.10 (2015). Under the FAA, the circuit court may rest its decision on any ground that exists at law or in equity for the revocation of any contract.

Reversed and Remanded.

11