# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**January 2016 Term**

———————————

**No. 14-0441**

———————————

**FILED**

**June 13, 2016**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**SCHUMACHER HOMES OF CIRCLEVILLE, INC.,**
a foreign corporation,
**Defendant Below, Petitioner**

**v.**

**JOHN SPENCER**
**and CAROLYN SPENCER,**
**Plaintiffs Below, Respondents**

_____

**Appeal from the Circuit Court of Mason County**
**The Honorable David W. Nibert, Judge**
**Civil Action No. 13-C-116**

**REVERSED AND REMANDED**
_____

**Submitted: May 17, 2016**
**Filed: June 13, 2016**

**Don C.A. Parker, Esq.**
**Nicholas P. Mooney II, Esq.**
**Spilman Thomas & Battle PLLC**
**Charleston, West Virginia**
**Attorneys for the Petitioner**

**Mychal S. Schulz, Esq.**
**Babst, Calland, Clements &**
**Zomnir, P.C.**
**Charleston, West Virginia**
**Attorney for Amicus Curiae,**
**Defense Trial Counsel of West Virginia**

**Randall L. Trautwein, Esq.**
**Michael L. Powell, Esq.**
**Lamp, Bartram, Levy, Trautwein &**
**Perry P.L.L.C.**
**Huntington, West Virginia**
**Attorneys for the Respondents**

**Mark A. Robinson, Esq.**
**Justin D. Jack, Esq.**
**Flaherty Sensabaugh Bonasso, PLLC**
**Charleston, West Virginia**
**Attorneys for Amicus Curiae,**
**West Virginia Health Care Association,**
**Inc.**

**CHIEF JUSTICE KETCHUM delivered the Opinion of the Court.**

SYLLABUS BY THE COURT

1.      "Under the Federal Arbitration Act, 9 U.S.C. § 2, a written provision to settle by arbitration a controversy arising out of a contract that evidences a transaction affecting interstate commerce is valid, irrevocable, and enforceable, unless the provision is found to be invalid, revocable or unenforceable upon a ground that exists at law or in equity for the revocation of any contract."   Syllabus Point 6, *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 724 S.E.2d 250 (2011), reversed on other grounds by *Marmet Health Care Ctr., Inc. v. Brown*, 132 S.Ct. 1201 (2012).

2.      "Under the Federal Arbitration Act, 9 U.S.C. § 2, and the doctrine of severability, only if a party to a contract explicitly challenges the enforceability of an arbitration clause within the contract, as opposed to generally challenging the contract as a whole, is a trial court permitted to consider the challenge to the arbitration clause. However, the trial court may rely on general principles of state contract law in determining the enforceability of the arbitration clause.  If necessary, the trial court may consider the context of the arbitration clause within the four corners of the contract, or consider any extrinsic evidence detailing the formation and use of the contract."  Syllabus Point 4, *State ex rel. Richmond American Homes of West Virginia, Inc. v. Sanders*, 228 W.Va. 125, 717 S.E.2d 909 (2011).

3.      "When a trial court is required to rule upon a motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-307 (2006), the authority of the trial court is limited to determining the threshold issues of (1) whether a

i

valid arbitration agreement exists between the parties; and (2) whether the claims averred by the plaintiff fall within the substantive scope of that arbitration agreement." Syllabus Point 2, *State ex rel. TD Ameritrade, Inc. v. Kaufman*, 225 W.Va. 250, 692 S.E.2d 293 (2010).

4.    A "delegation provision" is a clause, within an agreement to arbitrate, which clearly and unmistakably provides that the parties to the agreement give to the arbitrator the power to decide the validity, revocability or enforceability of the arbitration agreement under general state contract law.

5.    Under the Federal Arbitration Act, 9 U.S.C. § 2, and the doctrine of severability, where a delegation provision in a written arbitration agreement gives to an arbitrator the authority to determine whether the arbitration agreement is valid, irrevocable or enforceable under general principles of state contract law, a trial court is precluded from deciding a party's challenge to the arbitration agreement. When an arbitration agreement contains a delegation provision, the trial court must first consider a challenge, under general principles of state law applicable to all contracts, that is directed at the validity, revocability or enforceability of the delegation provision itself.

6.    "Nothing in the Federal Arbitration Act, 9 U.S.C. § 2, overrides normal rules of contract interpretation. Generally applicable contract defenses—such as laches, estoppel, waiver, fraud, duress, or unconscionability—may be applied to invalidate an arbitration agreement." Syllabus Point 9, *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 724 S.E.2d 250 (2011), reversed on other grounds by *Marmet Health Care Ctr., Inc. v. Brown*, 132 S.Ct. 1201 (2012).

ii

7. Under the Federal Arbitration Act, 9 U.S.C. § 2, there are two prerequisites for a delegation provision to be effective. First, the language of the delegation provision must reflect a clear and unmistakable intent by the parties to delegate state contract law questions about the validity, revocability, or enforceability of the arbitration agreement to an arbitrator. Second, the delegation provision must itself be valid, irrevocable and enforceable under general principles of state contract law.

Chief Justice Ketchum:

This case is again before the Court upon a remand from the United States Supreme Court. The case began as an appeal of an order from the Circuit Court of Mason County, and involves an arbitration agreement between a home builder and a home buyer. The circuit court refused to enforce the arbitration agreement after finding it was unconscionable. In a prior opinion, we affirmed the circuit court's order.

As set forth below, we now reverse the circuit court's order. Before the circuit court and this Court, the builder argued that language in the arbitration agreement delegated questions about unconscionability to the arbitrator for resolution. The home buyer never specifically challenged the delegation language, before the circuit court or this Court. We find that the home buyer has therefore waived any right to challenge the delegation language. We remand the case to the circuit court, and direct that the parties' dispute regarding the validity, revocability, or enforceability of the arbitration agreement be referred to arbitration.

# I.
# FACTUAL AND PROCEDURAL BACKGROUND

In June 2011, John and Carolyn Spencer ("the plaintiffs") signed a form contract with defendant Schumacher Homes of Circleville, Inc. ("Schumacher"), for the construction of a house in Milton, West Virginia. The contract contains an arbitration clause by which the parties agreed, in relevant part, "that any claim, dispute or cause of action, of any nature . . . shall be subject to final and binding arbitration by an arbitrator[.]"

1

Within another part of the arbitration clause is language that Schumacher contends is a "delegation provision" saying that the parties agreed to delegate, from the courts to an arbitrator, any question about the enforceability of the arbitration clause. A delegation provision is a written agreement, nestled within an arbitration clause, to vest the arbitrator with sole authority to resolve any dispute over the validity, revocability or enforceability of the arbitration clause under state contract law. The language in Schumacher's form contract comprising the delegation provision states:

> The arbitrator(s) shall determine all issues regarding the arbitrability of the dispute.

Nowhere in the contract is the term "arbitrability" defined for the parties.

In July 2013, the plaintiffs brought suit against Schumacher in the circuit court claiming that there were defects in the newly-built house. In August 2013, Schumacher filed a motion asking the circuit court to dismiss the plaintiffs' suit and to compel the plaintiffs to participate in arbitration. Neither Schumacher's motion nor its legal memorandum supporting the motion made any mention of the delegation provision. The plaintiffs responded to the motion by writing that the court should find that the entire arbitration clause was unconscionable and unenforceable under state contract law.

At a hearing in February 2014, Schumacher asserted for the first time that the arbitration clause contained a delegation provision. Schumacher argued to the circuit court that, because of the delegation language, the court had no power to weigh the unconscionability of the arbitration clause. Schumacher stated that upon invocation of a delegation provision, "that's really the end of the inquiry" and "[i]t's for the arbitrator to

2

decide whether [the arbitration clause is] unconscionable." The plaintiffs, apparently caught off guard, did not mention the delegation language in their oral argument to the circuit court, nor did they seek additional time to respond to Schumacher's argument. Instead, the plaintiffs' argument centered solely upon the unconscionable aspects of the arbitration clause.

In an order dated March 6, 2014, the circuit court denied Schumacher's motion to dismiss and compel arbitration. The circuit court found that, as a whole, the arbitration clause was procedurally and substantively unconscionable. The circuit court's order did not address the delegation provision. Schumacher appealed the circuit court's order to this Court.

Schumacher's petition for appeal specifically raised the circuit court's failure to address the delegation provision. Schumacher asserted that the circuit court had "erred by ruling on questions of arbitrability despite the existence of a provision in the parties' Arbitration Agreement that vested the arbitrator with authority to determine all issues of arbitrability relating to the dispute."[1]

The plaintiffs' response brief, however, did not challenge the delegation provision and, in fact, made no mention of Schumacher's assertion of the delegation provision. The plaintiffs' response brief recited the same arguments as the plaintiffs'

---

[1] *Petitioner's Brief* at 1.

3

brief to the circuit court and focused solely upon "whether the arbitration provision is unenforceable as being unconscionable."[2]

Our opinion in *Schumacher Homes of Circleville, Inc. v. Spencer* (hereafter "*Schumacher I*")[3] explicated the law of arbitration agreements and delegation provisions under the Federal Arbitration Act ("the FAA"). Under the FAA, the language of a delegation provision must reflect the parties' clear and unmistakable intention to delegate issues about the validity, revocability, or enforceability of the arbitration agreement to an arbitrator.[4] We then examined the language of Schumacher's purported delegation provision and found the word "arbitrability" to be ambiguous. We determined that the circuit court would have been within its rights not to enforce the delegation language because it "[did] not reflect a clear and unmistakable intent by the parties to delegate state contract law questions about the validity, revocability, or enforceability of the arbitration clause to an arbitrator."[5]

Schumacher then petitioned the United States Supreme Court for a writ of certiorari. Schumacher asserted that, under Supreme Court precedent, "a delegation

---

[2] *Response to Petition for Appeal* at 8.

[3] *Schumacher Homes of Circleville, Inc. v. Spencer*, 235 W.Va. 335, 774 S.E.2d 1 (2015).

[4] 235 W.Va. at 346, 774 S.E.2d at 12.

[5] 235 W.Va. at 348, 774 S.E.2d at 14. *See also*, Alan Scott Rau, "The Arbitrability Question Itself," 10 Am. Rev. Int'l Arb. 287, 308 (1999); Michelle St. Germain, "The Arbitrability of Arbitrability," 2005 J. of Disp. Res. 523 (2005).

provision contained within an arbitration agreement must be specifically enforced unless the party opposing arbitration specifically challenges the delegation provision."[6]  In an order issued February 29, 2016, the Supreme Court granted the writ of certiorari, vacated *Schumacher I*, and remanded the case back to this Court "for further consideration in light of [their new opinion in] *DIRECTV, Inc. v. Imburgia*, 577 U.S. ___, 136 S.Ct. 463, 193 L.Ed.2d 365 (2015)."[7]

Upon remand, we asked the parties for supplemental briefs that were to "solely and specifically address how the Supreme Court's decision in *DIRECTV, Inc. v. Imburgia* affects this Court's resolution of the issues in this case."[8]  This was largely because the *DIRECTV* opinion was decided by the Supreme Court eight months *after* our opinion in *Schumacher I*.[9]

The parties' supplemental briefs did not dispute this Court's explication in *Schumacher I* of the federal law underlying arbitration agreements, but focused on whether the word "arbitrability" had a clear and unmistakable meaning for the parties. Further, at oral argument, counsel for Schumacher agreed that the law stated in the

---

[6] *Petition for a Writ of Certiorari* at 12.

[7] *See Schumacher Homes of Circleville, Inc. v. Spencer*, 136 S.Ct. 1157, 194 L. Ed. 2d 164 (2016).

[8] Order, March 2, 1016.

[9] *Schumacher I* was issued April 24th; *DIRECTV* was issued December 14th.

5

syllabus points[10] and within the text of *Schumacher I* was correct; counsel asserted that it was the application of that law that was in error.

With the *Schumacher I* opinion vacated by the Supreme Court's order, we now reexamine the law of arbitration, the law of delegation provisions, and how courts and litigants should treat those contractual promises in light of the FAA, our state's contract law, and *DIRECTV, Inc. v. Imburgia*.[11]

## II.
## STANDARD OF REVIEW

"An order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine."[12] Because the circuit court's ruling denied Schumacher's motion to dismiss, we review the circuit court's order *de novo*.[13]

---

[10] Syllabus points are constitutionally required in each opinion of this Court. W.Va. Const. art. VIII, § 4. "The consequence of this [constitutional] provision is that the Court itself—not the reporter of decisions or the publisher—drafts the syllabus in a published opinion. As a result, the syllabus in every published opinion is an integral part of the decision itself. Each point in the syllabus is numbered, which facilitates ease of reference in later opinions." *State v. McKinley*, 234 W.Va. 143, 149, 764 S.E.2d 303, 309 (2014).

[11] 577 U.S. ___, 36 S.Ct. 463, 193 L.Ed.2d 365 (2015).

[12] Syllabus Point 1, *Credit Acceptance Corp. v. Front*, 231 W.Va. 518, 745 S.E.2d 556 (2013). *See also*, *W.Va. Code* § 55-10-30 [2015] (section of the Revised Uniform Arbitration Act setting forth when arbitration matters may be appealed).

[13] *See* Syllabus Point 4, *Ewing v. Bd. of Educ. of Cnty. of Summers*, 202 W.Va. 228, 503 S.E.2d 541 (1998) ("When a party, as part of an appeal from a final

(continued . . .)

6

### III.
### ANALYSIS

The issue we focus upon concerns the effect of a "delegation provision" contained within an arbitration clause in a larger contract. The parties agree our discussion of the issue is controlled by the FAA.

Schumacher argues that the arbitration clause in its form contract contains language that is a delegation provision. The provision says that "[t]he arbitrator(s) shall determine all issues regarding the arbitrability of the dispute." The contract does not define "arbitrability." Still, Schumacher argues that the trial court erred in finding the entire arbitration clause unconscionable, and should have enforced the delegation language and referred all of the parties' claims about "arbitrability" to arbitration.

The plaintiffs made no argument in the circuit court challenging the interpretation, enforceability or validity of the delegation language. By the same token, counsel for Schumacher never raised, discussed, or briefed the language until oral argument before the circuit court.[14] It is clear that counsel for the plaintiffs did not have

---

judgment, assigns as error a circuit court's denial of a motion to dismiss, the circuit court's disposition of the motion to dismiss will be reviewed *de novo*.").

[14] In a similar belated fashion, on Friday, May 13, 2016, four days before the supplemental oral arguments in this case, counsel for Schumacher hand delivered a letter to the Clerk of this Court. The professed reason for the letter was to supply the Court with "new" legal authority pursuant to Rule 10(i) of the *Rules of Appellate Procedure*. Attached to the letter was a 2004 Ohio Supreme Court opinion, and plaintiffs' counsel was mailed a copy. It appears that the letter was an attempt to disadvantage the plaintiffs, because it was destined to be reviewed by the members of this

(continued . . .)

prior notice of Schumacher's intent to rely upon the delegation provision. However, once Schumacher did so, counsel for the plaintiffs should not have ignored the argument.

Before this Court, Schumacher specifically asserted that the circuit court should have enforced the delegation provision. Inexcusably, the plaintiffs' counsel never challenged the provision. As we discuss below, under the FAA and the Supreme Court's opinions interpreting the FAA, a delegation provision contained within an arbitration agreement must be enforced unless the party opposing arbitration specifically challenges the delegation provision. Hence, our proper course in *Schumacher I* should have been to enforce the delegation language.

The primary substantive provision of the FAA is Section 2,[15] which we have interpreted as follows:

---

Court the following Monday, the day before oral arguments. Further, plaintiffs' counsel would not have had time to research and draft a response before oral arguments.

Rule 10(i) permits a party to present to the Court "late authorities, newly enacted legislation, or other intervening matters that *were not available in time to have been included in the party's brief*[.]" In the five weeks before oral argument, Schumacher had already filed two briefs with the Court. Furthermore, this Court had ordered the parties' briefs to be limited "solely and specifically" to the U.S. Supreme Court's decision in *DIRECTV*. The letter violates the Court's order and raises a new legal question not addressed in either of Schumacher's briefs or by *DIRECTV*. Legally stated, the letter does not provide new legal authorities, legislation or matters that were not available in time to have been included in the party's brief(s).

[15] 9 U.S.C. § 2 [1947] states:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the

(continued . . .)

Under the Federal Arbitration Act, 9 U.S.C. § 2, a written provision to settle by arbitration a controversy arising out of a contract that evidences a transaction affecting interstate commerce is valid, irrevocable, and enforceable, unless the provision is found to be invalid, revocable or unenforceable upon a ground that exists at law or in equity for the revocation of any contract.[16]

The FAA recognizes that an agreement to arbitrate is a contract. The rights and liabilities of the parties are controlled by the state law of contracts. If the parties have entered into a contract (which is valid under state law) to arbitrate a dispute, then the FAA requires courts to honor parties' expectations and compel arbitration.[17] Conversely, a party cannot be forced to submit to arbitration any dispute which he or she

---

whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

[16] Syllabus Point 6, *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 724 S.E.2d 250 (2011) ("*Brown I*"), overruled on other grounds by *Marmet Health Care Center, Inc. v. Brown*, 132 S.Ct. 1201 (2012).

[17] Syllabus Point 7 of *Brown I*, 228 W.Va. at 656-57, 724 S.E.2d at 260-61, states this principle:

The purpose of the Federal Arbitration Act, 9 U.S.C. § 2, is for courts to treat arbitration agreements like any other contract. The Act does not favor or elevate arbitration agreements to a level of importance above all other contracts; it simply ensures that private agreements to arbitrate are enforced according to their terms.

9

has not agreed to submit. A court may submit to arbitration "those disputes – but only those disputes – that the parties have agreed to submit to arbitration."[18]

## A.
## Doctrine of Severability

When a lawsuit is filed implicating an arbitration agreement, and a party to the agreement seeks to resist arbitration, the Supreme Court has interpreted the FAA to require application of the doctrine of "severability" or "separability." The gist of the doctrine is that an arbitration clause in a larger contract must be carved out, severed from the larger contract, and examined separately. The doctrine "treats the arbitration clause as if it is a separate contract from the contract containing the arbitration clause, that is, the 'container contract.'"[19] Under the doctrine, arbitration clauses must be severed from the remainder of a contract, and must be tested separately under state contract law for validity and enforceability. In Syllabus Point 4 of *State ex rel. Richmond American Homes v. Sanders*, we said in part:

> Under the Federal Arbitration Act, 9 U.S.C. § 2, and the doctrine of severability, only if a party to a contract explicitly challenges the enforceability of an arbitration clause within the contract, as opposed to generally

---

[18] *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 1924 (1995). *See also State ex rel. Richmond American Homes of West Virginia v. Sanders*, 228 W.Va. 125, 129, 717 S.E.2d 909, 913 (2011) (same).

[19] Stephen J. Ware, *Arbitration Law's Separability Doctrine After Buckeye Check Cashing, Inc. v. Cardegna*, 8 Nevada L.J. 107, 109 (2007).

10

challenging the contract as a whole, is a trial court permitted to consider the challenge to the arbitration clause.[20]

Additionally, the FAA requires a severed arbitration clause to be evaluated under precepts of contract law applicable to any contract (not just arbitration agreements).[21] Hence, we concluded in Syllabus Point 4 of *Richmond American Homes* that:

> [T]he trial court may rely on general principles of state contract law in determining the enforceability of the arbitration clause. If necessary, the trial court may consider the context of the arbitration clause within the four corners of the contract, or consider any extrinsic evidence detailing the formation and use of the contract.[22]

In other words, in determining if the severed arbitration clause is enforceable under generic principles of contract law, the trial court can look at other parts of the contract that relate to, support, or are otherwise entangled with the operation of the arbitration clause.

---

[20] *Richmond American Homes*, 228 W.Va. at 129, 717 S.E.2d at 913.

[21] Syllabus Point 8 of *Brown I*, 228 W.Va. at 657, 724 S.E.2d at 261, states this rule:

> A state statute, rule, or common-law doctrine, which targets arbitration provisions for disfavored treatment and which is not usually applied to other types of contract provisions, stands as an obstacle to the accomplishment and execution of the purposes and objectives of the Federal Arbitration Act, 9 U.S.C. § 2, and is preempted.

[22] *Richmond American Homes*, 228 W.Va. at 129, 717 S.E.2d at 913.

11

The United States Supreme Court has repeatedly interpreted the FAA to require questions about the validity of an arbitration provision to be severed and adjudicated separately from any other contractual question. "'This doctrine is essentially a pleading standard' that holds that 'only if a party explicitly challenges the enforceability of an arbitration clause within a contract is a court then permitted to consider challenges to the arbitration clause.'"[23]

> The doctrine of severability means this: If a party challenges the enforceability of the entire contract (including the arbitration clause)—that is, the party does not sever the arbitration clause from the rest of the contract and make a discrete challenge to the validity of the arbitration clause—then the court is completely deprived of authority and only an arbitrator can assess the validity of the contract, including the validity of the arbitration clause.[24]

Once the arbitration clause has been severed or separated out for scrutiny, the FAA limits the trial court to considering only two threshold questions: (1) Under state contract law, is there a valid, irrevocable, and enforceable arbitration agreement between the parties? And, (2) Does the parties' dispute fall within the scope of the arbitration agreement? This second question must be weighed in view of the FAA being a "congressional declaration of a liberal federal policy favoring arbitration agreements,"

---

[23] *Id.,* 228 W.Va. at 134, 717 S.E.2d at 918 (quoting *Brown I*, 228 W.Va. at 675, 724 S.E.2d at 279).

[24] *Brown I*, 228 W.Va. at 675, 724 S.E.2d at 279 (2011) (quotations and footnotes omitted).

and establishing that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."[25]  As we once said:

> When a trial court is required to rule upon a motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-307 (2006), the authority of the trial court is limited to determining the threshold issues of (1) whether a valid arbitration agreement exists between the parties; and (2) whether the claims averred by the plaintiff fall within the substantive scope of that arbitration agreement.[26]

With the concept of severance of arbitration clauses in mind, we now turn to the United States Supreme Court's jurisprudence concerning delegation provisions.

## B.
## Delegation Provisions and Severability

A "delegation provision" is a clause, within an agreement to arbitrate, which clearly and unmistakably provides that the parties to the agreement give to the arbitrator the power to decide the validity, revocability or enforceability of the arbitration agreement under general state contract law.[27]

---

[25] *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941 (1983) (footnote added).

[26] Syllabus Point 2, *State ex rel. TD Ameritrade, Inc. v. Kaufman*, 225 W.Va. 250, 692 S.E.2d 293 (2010).

[27] For an example of a clear delegation provision, the Supreme Court once examined delegation language in an arbitration agreement that provided:

> The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any

(continued . . .)

The way that courts treat a delegation provision within an arbitration agreement should reflect the principle that arbitration is purely a matter of contract. In their contract, the parties may agree that questions about the validity, revocability or enforceability of an arbitration agreement under state contract law will be delegated from a court to an arbitrator. "Because the parties are the masters of their collective fate, they can agree to arbitrate almost any dispute—even a dispute over whether the underlying dispute is subject to arbitration."[28]

The United States Supreme Court extended the severability doctrine to a delegation provision within an arbitration agreement in *Rent-A-Center, West, Inc. v.*

claim that all or any part of this Agreement is void or voidable.

*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 66, 130 S.Ct. 2772, 2775 (2010).

[28] *Bruni v. Didion*, 160 Cal.App.4th 1272, 1286, 73 Cal.Rptr.3d 395, 407 (2008).

On a related note, the Revised Uniform Arbitration Act, *W.Va. Code* § 55–10–8(c) [2015], provides that every "decision as to whether the arbitration agreement is enforceable shall be made by a court of competent jurisdiction" regardless of what the parties may have otherwise agreed. As to contracts affecting interstate commerce, Section 8(c) appears to conflict with the Supreme Court's holdings that any state statute which impedes an arbitration agreement and targets it for treatment not usually applied to other kinds of contracts is preempted by the FAA. *See* Syllabus Point 8, *Brown I*, 228 W.Va. at 657, 724 S.E.2d at 261; *Southland Corp. v. Keating*, 465 U.S. 1, 16, 104 S.Ct. 852, 861 (1984) (the FAA "foreclose[s] state legislative attempts to undercut the enforceability of arbitration agreements."). Under the holdings of the United States Supreme Court, Section 8(c) may be preempted by the FAA if an arbitration agreement contains a valid and enforceable delegation clause.

14

*Jackson*.[29]  The Supreme Court decided that a properly-drafted delegation provision is nothing more than a narrow "written provision" to "settle by arbitration" any question about the validity and enforceability of the arbitration agreement.[30]  Succinctly, a delegation clause is "a distinct mini-arbitration agreement divisible from the contract in which it resides – which just so happens also to be an arbitration agreement."[31]  Hence, "the FAA operates on this additional arbitration agreement just as it does on any other," and a delegation provision is valid under the FAA "save upon such grounds as exist at law or in equity for the revocation of any contract."[32]

*Rent-A-Center* stands for the proposition that a delegation provision is a mini-arbitration agreement divisible from both the broader arbitration clause and the even broader contract in which the delegation provision and arbitration clause are found. Therefore, a party must specifically object to the delegation provision in order for a court to consider the challenge.  A party resisting delegation to an arbitrator of any question about the enforceability of an arbitration agreement must successfully challenge the delegation provision first.

The take-away rule from *Rent-A-Center* is this: under the FAA and the doctrine of severability, where a delegation provision in a written arbitration agreement

---

[29] 561 U.S. 63, 130 S.Ct. 2772.

[30] 561 U.S. at 70, 130 S.Ct. at 2777-78 (quoting 9 U.S.C. § 2).

[31] 561 U.S. at 85, 130 S.Ct. at 2787 (Stevens, J., dissenting).

[32] 561 U.S. at 70, 130 S.Ct. at 2777-78 (quoting 9 U.S.C. § 2).

15

gives to an arbitrator the authority to determine whether the arbitration agreement is valid, irrevocable or enforceable under general principles of state contract law, a trial court is precluded from deciding a party's challenge to the arbitration agreement. When an arbitration agreement contains a delegation provision, the trial court must first consider a challenge, under general principles of state law applicable to all contracts, that is directed at the validity, revocability or enforceability of the delegation provision itself.

Under this rule, if the trial court finds the delegation provision to be effective, then the case must be referred to the parties' arbitrator who can then decide if the arbitration agreement is invalid, revocable or unenforceable. Conversely, if the delegation provision is ineffective on a ground that exists at law or in equity for the revocation of any contract, then the trial court may examine a challenge to the arbitration agreement.

We recognize that this rule seems intricate and complex. However, we must "respect and appreciate the support of Congress and the Supreme Court for an arbitration procedure that reduces the costs and delays of civil litigation."[33] Our application of the FAA must be consistent with the Supreme Court's interpretations of that law.[34]

---

[33] *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 668 (4th Cir. 2016).

[34] *DIRECTV*, 136 S.Ct. at 468 ("[T]he 'Supremacy Clause forbids state courts to dissociate themselves from federal law because of disagreement with its content or a refusal to recognize the superior authority of its source' . . . . The Federal Arbitration Act is a law of the United States, and [*AT&T Mobility LLC v.] Concepcion* is an authoritative interpretation of that Act. Consequently, the judges of every State must

(continued . . .)

16

The facts in *Rent-A-Center* demonstrate the application of this delegation provision rubric. An employee, Jackson, filed an employment discrimination suit against his employer, Rent-A-Center. The employer filed a motion to compel arbitration under an arbitration agreement. Furthermore, the employer asserted that the arbitration agreement had a provision delegating to the arbitrator "exclusive authority to resolve any dispute relating to the . . . enforceability" of the arbitration agreement.[35] At the trial court level, the employee opposed the motion to compel on the ground that the entire arbitration agreement was unconscionable and unenforceable. The employee did not challenge the delegation provision separate from the arbitration agreement. Further, on appeal to the U.S. Court of Appeals, the employee's brief simply noted the existence of the delegation provision while then asserting the entire arbitration agreement was unconscionable; the employee again "did not contest the validity of the delegation provision in particular."[36] The employee repeated that argument to the Supreme Court and argued that the entire arbitration agreement was unconscionable.[37]

The Supreme Court determined that "unless Jackson challenged the delegation provision specifically, we must treat it as valid [under the FAA] . . . and must

---

follow it. U.S. Const., Art. VI, cl. 2 ("[T]he Judges in every State shall be bound' by 'the laws of the United States').").

[35] *Rent-A-Center*, 561 U.S. at 66, 130 S.Ct. at 2775. For the text of the delegation provision, see *supra*, footnote 27.

[36] 561 U.S. at 74, 130 S. Ct. at 2780.

[37] 561 U.S. at 75, 130 S. Ct. at 2781.

17

enforce it . . . leaving any challenge to the validity of the [Arbitration] Agreement as a whole for the arbitrator."[38] Jackson addressed the "validity of the contract as a whole," but failed to "even mention the delegation provision" in his arguments to the trial court.[39] On these facts, the Supreme Court concluded that the delegation provision was enforceable, and that the trial court should have referred Jackson's arguments about the unconscionability of the arbitration agreement to an arbitrator.

## C.
## Challenging a Delegation Provision

To be clear, it is still possible to oppose enforcement of a delegation provision. The FAA does not require all claims to be sent to arbitration merely because there is a delegation provision. As the Supreme Court stated, because delegation clauses and "agreements to arbitrate are severable does not mean that they are unassailable."[40] Severance is merely a speedbump on the road to deliberating the enforceability of the provision.

A party seeking to enforce an arbitration clause, or a party resisting arbitration, must begin any argument with the recognition that arbitration is purely a matter of contract. In the context of whether the parties have agreed to arbitrate the merits of a dispute (which is, under one definition, the "arbitrability" of a question), the

---

[38] 561 U.S. at 72, 130 S.Ct. at 2779.

[39] *Id.*

[40] 561 U.S. at 71, 130 S.Ct. at 2778.

United States Supreme Court said, "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so."[41] Likewise, this Court has found that "parties are only bound to arbitrate those issues that by clear and unmistakable writing they have agreed to arbitrate," and that an "agreement to arbitrate will not be extended by construction or implication."[42] The "clear and unmistakable" test reflects a "heightened standard" of proof of the parties' "manifestation of intent."[43] The heightened standard was adopted

> because the question of who would decide the unconscionability of an arbitration provision is not one that the parties would likely focus upon in contracting, and the default expectancy is that the court would decide the matter. Thus, the Supreme Court has decreed, a contract's silence or ambiguity about the arbitrator's power in this regard cannot satisfy the clear and unmistakable evidence standard.[44]

Questions about the validity, revocability, and enforceability of a provision delegating a problem with the enforceability or scope of an arbitration clause are resolved by looking to state contract law. "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-

---

[41] *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. at 944, 115 S.Ct. at 1924.

[42] Syllabus Point 10, *Brown I*, 228 W.Va. at 657, 724 S.E.2d at 261.

[43] *Rent-A-Center,* 561 U.S. at 70 n.1, 130 S.Ct. at 2778 n.1.

[44] *Ajamian v. CantorCO2e, L.P.*, 203 Cal.App.4th 771, 782, 137 Cal.Rptr.3d 773, 782 (2012) (citations omitted).

19

law principles that govern the formation of contracts."[45] "Nothing in the Federal Arbitration Act, 9 U.S.C. § 2, overrides normal rules of contract interpretation. Generally applicable contract defenses—such as laches, estoppel, waiver, fraud, duress, or unconscionability—may be applied to invalidate an arbitration agreement."[46]

Any generic state-law contract principle may be employed to invalidate a severed delegation provision within an arbitration agreement; the only caveat is that the principle cannot be aimed at arbitration agreements alone.[47] For example, state contract law requires a trial court examining the enforceability of a contract provision to weigh the challenged provision in context, and consider other parts of the contract that relate to, support, or are otherwise intertwined with the operation of the challenged provision. *Richmond American Homes*, 228 W.Va. at 135, 717 S.E.2d at 919. The general tools for examining contracts are familiar to any first-year law student: ambiguity, coercion, duress, estoppel, fraud, impracticality, laches, lack of capacity, misrepresentation, mistake, mutuality of assent, unconscionability, undue influence, waiver, or even lack of offer, acceptance or consideration. If the contract defense exists under general state contract law principles, then it may be asserted to counter the claim that an arbitration agreement or a provision therein binds the parties.

---

[45] *First Options*, 514 U.S. at 944, 115 S.Ct. at 1924.

[46] Syllabus Point 9, *Brown I*, 228 W.Va. at 657, 724 S.E.2d at 261.

[47] *See, e.g.*, *Geological Assessment & Leasing v. O'Hara*, 236 W.Va. 381, 386, 780 S.E.2d 647, 652 (2015) (circuit court improperly ruled that "state law outright prohibits the arbitration of claims involving the unauthorized practice of law").

To summarize, when a party seeks to enforce a delegation provision in an arbitration agreement against an opposing party, under the FAA there are two prerequisites for a delegation provision to be effective. First, the language of the delegation provision must reflect a clear and unmistakable intent by the parties to delegate state contract law questions about the validity, revocability, or enforceability of the arbitration agreement to an arbitrator. Second, the delegation provision must itself be valid, irrevocable and enforceable under general principles of state contract law.

## D.
### Applying the Rules

We now turn to the subject delegation language. It provides, "The arbitrator(s) shall determine all issues regarding the arbitrability of the dispute." After considering *DIRECTV*, we believe that this language controls the outcome of this case for one reason: the doctrine of severability.

The procedural posture of this case is largely indistinguishable from that in *Rent-A-Center, West, Inc. v. Jackson.* Like in *Rent-A-Center*, the plaintiffs in this case failed to sever and contest the validity of the delegation language in the arbitration agreement with particularity.

In *Rent-A-Center*, before the trial court, the employer asserted that a delegation provision required questions about the unconscionability of the arbitration agreement to be resolved by the arbitrator. The employee never disputed the enforceability of the delegation provision, and only challenged the arbitration agreement

21

in its entirety. The same thing occurred before the circuit court in this case. Indeed, the record is clear in the instant case that the plaintiffs wholly failed to acknowledge the existence of the delegation language, let alone mount a challenge.

More importantly, in *Rent-A-Center*, the employer asserted the delegation provision twice on appeal, before both the U.S. Court of Appeal and the U.S. Supreme Court. Both times, the employee ignored the delegation provision and argued that the arbitration agreement was unconscionable in totality. The same thing occurred in this case before this Court. In its petition for appeal, Schumacher raised the circuit court's failure to address the delegation language as a point of error. In their response brief, counsel for the plaintiffs ignored Schumacher's asserted point of error. Counsel for the plaintiffs made the same arguments as below and said that the arbitration agreement was unconscionable in totality.

Before both the circuit court and this Court, the plaintiffs failed to sever the delegation language and dispute its validity. Unless the plaintiffs challenged the delegation language specifically, we must treat it as valid under the FAA and must enforce it, leaving any challenge to the validity of the arbitration agreement as a whole for the arbitrator.[48] The plaintiffs' arguments addressed the validity of the arbitration agreement as a whole, but failed to even mention the delegation language in their arguments to the circuit court and this Court. On these procedural facts, we find that the delegation language within the parties' arbitration agreement is enforceable, and that the

---

[48] *Rent-A-Center*, 561 U.S. at 72, 130 S.Ct. at 2779.

22

circuit court should have referred the plaintiffs' arguments about the enforceability of the arbitration agreement to an arbitrator.

## IV.
## CONCLUSION

We reverse the circuit court's March 6, 2014, order, and remand the case to the circuit court with directions to refer the plaintiffs' challenge to the enforceability of the arbitration clause to an arbitrator, in accordance with the parties' contract.

Reversed and remanded.