IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2026 Term

_____

No. 24-305

_____

FILED

June 1, 2026

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Credit Acceptance Corporation,
Plaintiff Below, Petitioner,

v.

Kenneth E. Stanley and Kerry J. Stanley,
Defendants Below, Respondents.

_____

Appeal from the Circuit Court of Jackson County
Honorable Lora A. Dyer, Judge
Civil Action No. 20-C-26

REVERSED AND REMANDED WITH INSTRUCTIONS
_____

Submitted: February 11, 2026
Filed: June 1, 2026

Jason E. Manning, Esq.
David M. Asbury, Esq.
Troutman Pepper Hamilton Sanders LLP
Virginia Beach, Virginia
Attorneys for Petitioner

Bren J. Pomponio, Esq.
Daniel F. Hedges, Esq.
Mountain State Justice, Inc.
Charleston, West Virginia
Attorneys for Respondents

JUSTICE TRUMP delivered the Opinion of the Court.

JUSTICE WOOTON dissents and reserves the right to file a separate opinion.

JUSTICE TITUS, deeming himself disqualified, did not participate in the decision of this case.

JUDGE DAVID AMSBARY, sitting by temporary assignment.

**SYLLABUS OF THE COURT**

1.     "When an appeal from an order denying a motion to dismiss and to compel arbitration is properly before this Court, our review is *de novo*." Syllabus Point 1, *West Virginia CVS Pharmacy, LLC v. McDowell Pharmacy, Inc.*, 238 W. Va. 465, 796 S.E.2d 574 (2017).

2.     "Under the Federal Arbitration Act, 9 U.S.C. § 2, a written provision to settle by arbitration a controversy arising out of a contract that evidences a transaction affecting interstate commerce is valid, irrevocable, and enforceable, unless the provision is found to be invalid, revocable or unenforceable upon a ground that exists at law or in equity for the revocation of any contract." Syllabus Point 6, *Brown ex rel. Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011), *overruled in part on other grounds by Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530 (2012).

3.     "Nothing in the Federal Arbitration Act, 9 U.S.C. § 2, overrides normal rules of contract interpretation. Generally applicable contract defenses—such as laches, estoppel, waiver, fraud, duress, or unconscionability—may be applied to invalidate an arbitration agreement." Syllabus Point 9, *Brown ex rel. Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011), *overruled in part on other grounds by Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530 (2012).

i

4. "To establish waiver of a contractual right to arbitrate, the party asserting waiver must show that the waiving party knew of the right to arbitrate and either expressly waived the right, or, based on the totality of the circumstances, acted inconsistently with the right to arbitrate through acts or language." Syllabus Point 6, in part, *Parsons v. Halliburton Energy Servs., Inc.*, 237 W. Va. 138, 785 S.E.2d 844 (2016).

5. When determining whether a party has impliedly waived a contractual right, a court must not evaluate the party's conduct in isolation from the contract itself. Only after ascertaining the precise nature of the parties' contractual rights, as defined by the specific language in the contract creating them, may a court determine whether a party has intentionally relinquished any of those rights through inconsistent actions.

**TRUMP, Justice:**

In this appeal, the petitioner, Credit Acceptance Corporation, challenges the January 18, 2024, order of the Circuit Court of Jackson County, denying its motion to compel arbitration of its ongoing contractual dispute with the respondents, Kenneth and Kerry Stanley. The petitioner holds the rights to a retail installment contract that the respondents entered into with a car dealership in 2018 to finance their purchase of a used vehicle. Although the retail installment contract contains an arbitration clause, the circuit court denied the petitioner's motion to compel arbitration after concluding that the petitioner waived its contractual arbitration rights by engaging in litigation against the respondents. As set forth below, we find that the circuit court erred in concluding that the petitioner waived its contractual arbitration rights. We therefore reverse the circuit court's order denying the petitioner's motion to compel arbitration and remand this matter to the circuit court for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 17, 2018, the respondents entered into a retail installment contract ("the contract") with Charleston Mitsubishi to finance the purchase of a 2008 Ford Escape ("the vehicle"). Charleston Mitsubishi immediately assigned the contract to the petitioner. The contract contains a section entitled "Arbitration Clause" ("the arbitration clause"), which provides in relevant part:

> Either You or We may require any Dispute to be arbitrated and
> may do so **before or after a lawsuit has been started** over the
> Dispute or **with respect to other Disputes or counterclaims**

1

**brought later in the lawsuit**. If You or We elect to arbitrate a Dispute, this Arbitration Clause applies. A Dispute shall be fully resolved by binding arbitration. Judgment on the arbitration award may be entered in any court with jurisdiction.

(Emphasis added). The arbitration clause broadly defines an arbitrable "Dispute" to include

any controversy or claim between You and Us arising out of or in any way related to this Contract, including, but not limited to, any default under this Contract, the collection of amounts due under this Contract, the purchase, sale, delivery, set-up, quality of the Vehicle, advertising for the Vehicle or its financing, or any product or service included in this Contract. "Dispute" shall have the broadest meaning possible, and includes contract claims, and claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories.

The arbitration clause expressly excludes from its scope "disputes about the validity, enforceability, coverage or scope of [the] [a]rbitration [c]lause or any part thereof" which, it specifies, "are for a court and not an arbitrator to decide."

Around a year after purchasing the vehicle, the respondents stopped making monthly installment payments under the contract and, on August 27, 2019, they voluntarily surrendered the vehicle to the petitioner for repossession. The petitioner then resold the vehicle for a sum insufficient to satisfy the respondents' remaining debt under the contract. On February 20, 2020, the petitioner filed a civil action against the respondents in the Circuit Court of Jackson County, seeking judgment in the amount of $8,172.98 (plus statutory interest and litigation costs) to recover the respondents' remaining debt. In response, the respondents filed a self-represented answer on March 3, 2020, asserting that they did "not owe the amount showing [$]8,172.98 due to the fact the Odometer reading

2

was incorrect" and that they were "told by another dealer [the vehicle] was in a major accident." The petitioner then served the respondents with a set of discovery requests on May 8, 2020, consisting of three pages of combined interrogatories, requests for production, and requests for admission, the latter of which asked the respondents to admit owing the debt alleged in the complaint. The petitioner's discovery requests instructed the respondents that a response was due within thirty days of service. On June 30, 2020, after the respondents had made no answer to the petitioner's discovery requests, the petitioner sent the respondents a letter attempting to confer over their failure to respond.[1] It appears from the record that there was no further activity in the civil action until a little over two years later, when the petitioner moved for summary judgment against the respondents on September 14, 2022. In support of its motion, the petitioner asserted that the respondents had admitted to the allegations in the complaint by default, because they failed to respond to the petitioner's requests for admission. *See* W. Va. R. Civ. P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."). The circuit court never rendered a ruling upon the petitioner's motion for summary judgment;[2] however, the court entered a scheduling order

_____

[1] The letter stated that the petitioner was attempting to confer with the respondents pursuant to West Virginia Rule of Civil Procedure 37, which requires a party to certify in a motion to compel disclosure or discovery that the party "in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." W. Va. R. Civ. P. 37(a)(1).

[2] The circuit court held a hearing on the petitioner's motion for summary judgment on May 11, 2023, but the respondents were not in attendance. The court struck the hearing

3

requiring all discovery to be completed by August 18, 2023, and setting a bench trial for December 6, 2023.

Shortly after the circuit court entered its scheduling order, but more than three years after they had been served with the petitioner's complaint, the respondents obtained counsel and filed a motion to amend their answer. Attached to the respondents' June 6, 2023, motion was the "Amended Answer, Affirmative Defenses, and Counterclaim Complaint" (collectively, "amended answer and counterclaim complaint") that the respondents intended to file. In their amended answer and counterclaim complaint, the respondents denied the allegations in the petitioner's complaint, asserted a number of affirmative defenses, and asserted numerous counterclaims against the petitioner. The counterclaim complaint included the following counts: fraud; unconscionable inducement, in violation of the West Virginia Consumer Credit and Protection Act (West Virginia Code § 46A-2-121); violation of the federal Truth in Lending Act (15 U.S.C. § 1638(b)(1)); violation of the federal Odometer Act (49 U.S.C. § 32705(a)); commercially unreasonable disposition, in violation of the Uniform Commercial Code (West Virginia Code § 46-9-610(b)); and a "joint venture" claim, alleging that the petitioner and Charleston Mitsubishi had acted in furtherance of a single enterprise, such that "each of the acts of one also constitute[d] the act of the other." The counterclaim complaint also included a prayer

---

from the record after learning that the respondents had appeared at the courthouse for the hearing but were directed to the wrong location within the building by an officer of the court.

for actual damages, punitive damages, attorney fees, litigation costs, and equitable relief. That same day, the respondents served a set of discovery requests on the petitioner.

On August 11, 2023, the petitioner filed a motion in the circuit court to compel arbitration of all claims and counterclaims involved in the civil action and attached the arbitration agreement to its motion as an exhibit.[3] The court convened a hearing on the motion to compel arbitration on September 27, 2023, where the respondents argued against the motion, asserting that the petitioner had waived its contractual arbitration rights by litigating the dispute in circuit court up to that point. At the end of the hearing, the circuit court announced from the bench that it was denying the petitioner's motion to compel arbitration and vacating its previously entered scheduling order. In its subsequent January 18, 2024, order memorializing those rulings, the court found that the petitioner had "exercised its right to file the lawsuit" against the respondents in circuit court; that the petitioner had "litigated its lawsuit by serving discovery on the *pro se* [respondents] and [moving the court] for summary judgment;" and that "more than three years passed before

---

[3] The petitioner's motion (entitled "Motion to Dismiss and Compel Arbitration") sought both to compel arbitration and dismiss the respondents' counterclaims. However, on appeal, the petitioner does not assign error to the circuit court's denial of the petitioner's motion to dismiss the respondents' counterclaims, nor does the petitioner request this Court to dismiss any claim in the underlying civil action. Instead, the petitioner requests that this Court "reverse the circuit court's order denying the Motion to Compel Arbitration and remand the matter with instructions to permit the action to proceed to arbitration **with a corresponding stay of proceedings pending its outcome**." (Emphasis added). Thus, we limit our review and discussion to the circuit court's denial of the petitioner's motion to compel arbitration.

[the petitioner] attempted to exercise the arbitration provision." The order "concluded that the petitioner waived its right to arbitrate due to the significant passage of time before moving [the court] to compel arbitration[.]" It is from this order that the petitioner now appeals.

## II. STANDARD OF REVIEW

It is well established that "[w]hen an appeal from an order denying a motion to dismiss and to compel arbitration is properly before this Court, our review is *de novo*." Syl. Pt. 1, *West Virginia CVS Pharmacy, LLC v. McDowell Pharmacy, Inc.*, 238 W. Va. 465, 796 S.E.2d 574 (2017). Additionally, "[a]n order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal [to this Court[4]] under the collateral order doctrine." Syl. Pt. 1, *Credit Acceptance Corp. v. Front*, 231 W. Va. 518, 745 S.E.2d 556 (2013).

## III. DISCUSSION

On appeal, the petitioner asserts that the circuit court erred in denying its motion to compel arbitration because the petitioner and the respondents are parties to a valid arbitration agreement, which must be enforced according to the Federal Arbitration

---

[4] Appeals of interlocutory orders pursuant to the collateral order doctrine are properly made to this Court, rather than to the Intermediate Court of Appeals. *See* W. Va. Code § 51-11-4 (defining the jurisdiction of the Intermediate Court of Appeals to include, in relevant part, "[f]inal judgments or orders of a circuit court in all civil cases" but not to include "interlocutory appeals").

6

Act[5] (the "FAA"). The petitioner argues that the court was required to give effect to the clear and unambiguous language of the arbitration clause, which expressly preserved the right of either party to require arbitration of a dispute "before or **after a lawsuit has been started** over the [d]ispute or **with respect to other [d]isputes or counterclaims brought later in the lawsuit**." (Emphasis added). The petitioner further argues that the court erred in finding the petitioner impliedly waived those specific contractual rights through inconsistent actions, considering that the petitioner moved to compel arbitration promptly after the respondents filed their amended answer and counterclaim complaint.[6] The petitioner contends that it could not have intentionally relinquished its right to arbitrate the respondents' counterclaims by virtue of conduct that occurred before the counterclaim complaint was even filed.

Conversely, the respondents argue that the circuit court was correct in finding that the petitioner intentionally relinquished its contractual arbitration rights through its inconsistent actions of instituting a civil debt collection action in circuit court, serving discovery requests, and moving for summary judgment against the respondents. The respondents also contend that allowing the petitioner to "strategically invoke" its

---

[5] 9 U.S.C. §§ 1-16.

[6] The respondents filed their amended answer and counterclaim complaint on June 6, 2023. The petitioner filed its motion to compel arbitration on August 11, 2023.

contractual arbitration rights over three years into a civil action would undermine a principal goal of arbitration—the expeditious resolution of claims.

"Under the Federal Arbitration Act, 9 U.S.C. § 2, a written provision to settle by arbitration a controversy arising out of a contract that evidences a transaction affecting interstate commerce is valid, irrevocable, and enforceable, unless the provision is found to be invalid, revocable or unenforceable upon a ground that exists at law or in equity for the revocation of any contract." Syl. Pt. 6, *Brown ex rel. Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011), *overruled in part on other grounds by Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530 (2012).[7] Nevertheless, we have explained that "[n]othing in the Federal Arbitration Act, 9 U.S.C. § 2, overrides the normal rules of contract interpretation. Generally applicable contract defenses—such as laches, estoppel, waiver, fraud, duress, or unconscionability—may be applied to invalidate an arbitration agreement." *Brown*, 228 W. Va. 646, 724 S.E.2d 250, Syl. Pt. 9. Thus, whether an arbitration agreement is "invalid, revocable, or unenforceable upon a ground that exists at law or in equity" is a determination that is made according to state law principles.[8] This

---

[7] We note that neither party contests that the FAA applies to the arbitration clause. By its own terms, the arbitration clause provides that it is "governed by the FAA," based on the fact that the contract "evidences a transaction in interstate commerce."

[8] *See, e.g.*, *Geological Assessment & Leasing v. O'Hara*, 236 W.Va. 381, 386, 780 S.E.2d 647, 652 (2015) ("The FAA recognizes that an agreement to arbitrate is a contract. The rights and liabilities of the parties are controlled by the state law of contracts."); *see also Parsons v. Halliburton Energy Servs., Inc.*, 237 W. Va. 138, 146-147, 785 S.E.2d 844, 852-853 (2016) (Explaining that "a state court may assess whether an arbitration agreement

Court has held that a valid arbitration agreement, like any other "valid written instrument which expresses the intent of the parties in plain and unambiguous language[,[9]] is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." Syl. Pt. 4, *Ampler Burgers Ohio LLC v. Bishop*, 250 W. Va. 269, 902 S.E.2d 818 (2024) (quoting Syl. Pt. 1, *Cotiga Dev. Co. v. United Fuel Gas Co.*, 147 W. Va. 484, 128 S.E.2d 626 (1962)). However, this Court has also made clear that, just like any other contractual right, "[t]he right to arbitration . . . can be waived." *Parsons*, 237 W. Va. 138, 785 S.E.2d 844, Syl. Pt. 6, in part.

"Under West Virginia contract law (and the contract law of most other states), the waiver of a contract right is defined as the voluntary, intentional relinquishment of a known right." *Id.* at 144, 128 S.E.2d at 850 (internal quotations and citations omitted). Such relinquishment "may be established by [a party's] express conduct or impliedly, through inconsistent actions." *Ara v. Erie Ins. Co.*, 182 W.Va. 266, 269, 387 S.E.2d 320, 323 (1989). Where, as here, the implied waiver of a contractual right is alleged, "[t]he burden of proof to establish waiver is on the party claiming the benefit of such waiver," who must show by "clear and convincing evidence . . . the party's intent to relinquish the

---

is unenforceable under general principles of state law" and that "we apply the general state law of contracts" when assessing claims of waiver).

[9] We note that neither party to this appeal contends that the language of the arbitration clause is vague or ambiguous.

9

known[10] right." *Potesta v. U.S. Fid. & Guar. Co.*, 202 W. Va. 308, 315, 504 S.E.2d 135, 142 (1998) (internal quotations and citations omitted). With respect to arbitration agreements, this Court has explained that "[t]o establish waiver of a contractual right to arbitrate, the party asserting waiver must show that the waiving party knew of the right to arbitrate and either expressly waived the right, or, based on the totality of the circumstances, acted inconsistently with the right to arbitrate through acts or language." *Parsons*, 237 W. Va. 138, 785 S.E.2d 844, Syl. Pt. 6, in part. We have also recognized that one way in which a party may act inconsistently with (and impliedly waive) its contractual arbitration rights is to engage in substantial litigation activity. *See Ampler*, 250 W. Va. at 281, 902 S.E.2d at 830.

Applying these standards to the matter before us, we remain mindful that both federal and state law reflect a strong public policy in favor of arbitration agreements and that parties subject to an agreement under the purview of the FAA are "generally free to structure their arbitration agreements as they see fit." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 469 (1989). This is because arbitration provides "an expeditious and relatively inexpensive forum for dispute resolution" that serves as "an efficient and cost-effective alternative to court litigation" and "unburdens crowded court dockets." *Parsons*, 237 W. Va. at 146, 785 S.E.2d at 852 (internal quotations

---

[10] We note that neither party disputes that the petitioner's contractual arbitration rights were "known" to the petitioner when it engaged in the conduct alleged to constitute waiver.

10

and citations omitted).[11] In view of this strong public policy and the applicable standard of proof, we have described the burden of persuasion on the party asserting implied waiver of a contractual right to arbitrate as a "heavy" one. *Ampler*, 250 W. Va. at 281, 902 S.E.2d at 830. Thus, the issue before this Court on appeal is whether the respondents have met their heavy burden of demonstrating, by clear and convincing evidence, that the petitioner intentionally relinquished its contractual arbitration rights through inconsistent actions—namely, by engaging in litigation against the respondents. Upon our review, we conclude that the respondents have failed to meet their burden and, as a result, the circuit court erred in concluding that the petitioner impliedly waived its contractual arbitration rights.

We begin our analysis by reiterating that the arbitration clause in the contract between the parties expressly preserves the right of either party to require arbitration of a dispute "before or after a lawsuit has been started over the [d]ispute or with respect to other [d]isputes or counterclaims brought later in the lawsuit." The respondents argue that this Court should ignore this plain contractual language and, instead, focus exclusively on the petitioner's conduct to determine whether waiver occurred. The respondents point to this Court's opinion in *Parsons* for support, where we held that "[t]he common-law doctrine of waiver focuses on the conduct of the party against whom waiver is sought[.]" *Parsons*, 237

---

[11] *See also* W. Va. Code § 55-10-2 (setting forth legislative findings that arbitration is efficient, cost-effective, and provides "participants with many of the same procedural rights and safeguards as traditional litigation" while "guarantee[ing] that no party to an arbitration agreement is unfairly prejudiced by agreeing to an arbitration agreement or provision").

W. Va. 138, 785 S.E.2d 844, Syl. Pt. 2, in part. However, the purpose of our holding in *Parsons* was to differentiate the doctrine of waiver from the doctrine of equitable estoppel, the latter of which requires a showing of detrimental reliance by the asserting party. No such showing is required to demonstrate that a party has waived a contractual right; thus, we have explained that the focus of the waiver inquiry is on the conduct of the parties *as opposed* to the question of whether there was "prejudice or detrimental reliance [to] the party asserting waiver." *Id.*; *see also Potesta*, 202 W.Va. at 316, 504 S.E.2d at 143 ("[U]nlike waiver, the doctrine of estoppel requires detrimental reliance."). This Court has never held, as the respondents incorrectly surmise, that a court may ignore the contractual language creating and defining a contractual right when determining whether the right has been waived. On the contrary, we now hold that when determining whether a party has impliedly waived a contractual right, a court must not evaluate the party's conduct in isolation from the contract itself. Only after ascertaining the precise nature of the parties' contractual rights, as defined by the specific language in the contract creating them, may a court determine whether a party has intentionally relinquished any of those rights through inconsistent actions.

Thus, with the language of the arbitration clause as our reference point, we next examine the totality of the circumstances surrounding the petitioner's conduct to determine whether its actions were inconsistent with the rights expressed therein. *See Parsons*, 237 W. Va. 138, 785 S.E.2d 844, Syl. Pt. 6. We recently examined whether a party's participation in litigation amounted to implied waiver of its contractual arbitration

12

rights in *Ampler*. There, we found that the party seeking to compel arbitration, Ampler Burgers Ohio LLC ("Ampler Burgers"), did not impliedly waive its contractual arbitration rights by engaging in litigation prior to filing a motion to compel arbitration later in a lawsuit. *Ampler*, 250 W. Va. 269, 902 S.E.2d 818. In reversing the circuit court's finding of waiver, the *Ampler* majority emphasized that Ampler Burgers had "not engage[d] in a lengthy motions practice," that "[n]o party had asked the circuit court to make a ruling on any issue," and that "the matter had not progressed to the point that it was near trial." *Id.* at 282, 902 S.E.2d at 831. Critically, the arbitration agreement at issue in *Ampler*, unlike the arbitration clause here, did not contain language specifically preserving the parties' right to require arbitration of a dispute "before or after a lawsuit has been started over the [d]ispute or with respect to other [d]isputes or counterclaims brought later in the lawsuit." *See id.* at 274, 902 S.E.2d at 823. Even setting this critical difference aside, it is readily apparent that the petitioner's litigation activity in the case before us was far less substantial than that which we examined and found *not* to constitute waiver in *Ampler*. In *Ampler*, we found that Ampler Burgers did not impliedly waive its contractual right to arbitrate by:

> answering and responding to two sets of discovery, supplementing discovery, responding to meet-and-confer emails and letters, entering an *Agreed Protective Order*, attending two scheduling conferences, negotiating an *Agreed Order for Substitution of Party*, participating in several emails and telephone calls, asking for deadline extensions, and making repeated requests for . . . deposition transcripts[.]

*Id.* at 284, 902 S.E.2d at 833 (Bunn, J., concurring). By comparison, the petitioner in this case engaged in far less discovery activity. After initiating its civil debt collection action against the respondents, the petitioner served a single, three-page discovery request on the

13

respondents in May 2020, consisting of seven requests for admission, two interrogatories, and two requests for production. In June 2020, the petitioner sent a letter to the respondents attempting to confer over their lack of response to the petitioner's discovery request. The record indicates that no additional activity occurred in the case until September 14, 2022, when the petitioner moved for summary judgment on the ground that the respondents had admitted to owing the debt alleged in the complaint as a result of their failure to respond to the petitioner's requests for admission concerning the debt. *See* W.Va. R. Civ. P. 36(a)(3).

Although we noted in *Ampler* that a party's request for a dispositive ruling may be evidence of waiver,[12] we have made clear that courts must consider the *totality* of the circumstances surrounding a party's conduct when determining whether waiver has occurred. *See Parsons*, 237 W. Va. 138, 785 S.E.2d 844, Syl. Pt. 6. In this case, the petitioner's motion for summary judgment was not the culmination of a lengthy motions practice or the exchange of discovery materials, as may often be the case when a party seeks a dispositive ruling. Rather, the petitioner sought summary judgment based solely on the respondents' failure to respond to its requests for admission. Further, we see no evidence that the petitioner took advantage of being in circuit court, as the petitioner never received any response to its limited discovery requests or a ruling on its motion for summary judgment. *See Ampler*, 250 W. Va. at 284, 902 S.E.2d at 833 (Bunn, J., concurring) (explaining that "taking advantage of being in court [is] evidence of

---

[12] *See Ampler*, 250 W. Va. at 282, 902 S.E.2d at 831; *see also id.* at 284, 902 S.E.2d at 833 (Bunn, J., concurring).

14

substantially invoking the litigation machinery"). When the circuit court vacated its scheduling order following the respondents' filing of their amended answer and counterclaim complaint, the litigation was returned to its infancy and the potential trial date, undoubtedly, deferred. *See id.* at 282, 902 S.E.2d at 831 (explaining that "the case was still in its infancy when the motion to compel arbitration was filed. . . . [and] the matter had not progressed to the point that it was near trial"). Based on the totality of these circumstances, we find that the respondents have failed to demonstrate by clear and convincing evidence that the petitioner's modest litigation activity over a period of three and half years was inconsistent with its express contractual right to arbitrate disputes "before or after a lawsuit has been started."

Further, in June 2023, the respondents' amended answer and counterclaim complaint clearly triggered the petitioner's express contractual right to arbitrate "other [d]isputes or counterclaims brought later in the lawsuit." The counterclaim complaint, in particular, drastically altered the scope of the dispute between the parties. It converted the lawsuit from a simple civil collection action for the recovery of $8,172.98 (plus interest and costs) into an action alleging numerous violations of federal and state law and potentially resulting in a judgment of actual damages, punitive damages, attorney fees, and equitable relief against the petitioner. Consistent with its express right to arbitrate counterclaims, the petitioner promptly filed its motion to compel arbitration of the newly complex lawsuit. As the petitioner points out, *Citibank, N.A. v. Perry*, 238 W. Va. 662, 797 S.E.2d 803 (2016), involved very similar facts. There*,* this Court found that a party seeking

15

to compel arbitration did not waive its contractual right to arbitrate late-filed counterclaims by virtue of its litigation activity before the counterclaims were filed. Citibank initiated its civil action against Mr. Perry in circuit court, seeking to recover a balance owed under his credit card agreement with Citibank. *Id.* at 664, 797 S.E.2d at 805. Like the arbitration clause at issue here, the credit card agreement in *Citibank* included an arbitration agreement that preserved the parties' right to compel arbitration, even after a civil lawsuit had commenced.[13] Mr. Perry filed a *pro se* answer to Citibank's civil complaint, acknowledging that he owed the debt and, in response, Citibank filed a motion for judgment on the pleadings that the court never ruled upon. *Id.* at 664, 797 S.E.2d at 805. The case remained inactive for more than three and a half years, until Citibank served discovery requests on Mr. Perry, at which point Mr. Perry obtained legal counsel and filed a class action counterclaim alleging, *inter alia*, violations of the West Virginia Consumer Credit and Protection Act. *Id.* Just like the petitioner here, Citibank responded by promptly

---

[13] The arbitration agreement at issue in *Citibank* read as follows:

> At any time you or we may ask an appropriate court to compel arbitration of Claims, or to stay the litigation of Claims pending arbitration, even if such Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered. Even if a party fails to exercise these rights at any particular time, or in connection with any particular Claims, that party can still require arbitration at a later time or in connection with any other claims.

*Id.* at 665, 797 S.E.2d at 806.

filing a motion to compel arbitration and stay proceedings,[14] which the circuit court denied, finding that Citibank had waived its contractual arbitration rights by engaging in litigation against Mr. Perry. *Id.*

On appeal in *Citibank*, this Court reversed the circuit court's ruling that Citibank had acted inconsistently with (and thereby waived) its contractual right to arbitrate Mr. Perry's counterclaims by litigating the underlying civil debt collection action. We explained that

> Mr. Perry's counterclaim, which asserted a putative class action claiming, *inter alia*, violations of the West Virginia Consumer Credit and Protection Act, significantly changed the character of the proceeding from a simple debt collection action to a potential class action lawsuit. Less than two months after Mr. Perry filed his counterclaim, Citibank filed its motion to compel arbitration and to stay the court action. Under these particular circumstances, we do not find evidence that Citibank's conduct demonstrated an intent to relinquish a known right.

*Id.* at 666, 797 S.E.2d at 807. In other words, this Court did not view Citibank's litigation of its initial debt collection action as evidence of an intention to relinquish its contractual right to arbitrate the more complex dispute instigated by Mr. Perry's late-filed counterclaims. Similar to the order on appeal in this case, the circuit court's order finding

---

[14] We note that, unlike the petitioner in this case, Citibank only moved to compel arbitration with respect to the class action counterclaims filed later in the lawsuit; Citibank did not move to compel arbitration of the underlying civil debt collection claims. We further acknowledge that, in some cases, parties may elect to arbitrate certain claims involved in a civil action and not others, according to the terms of the applicable arbitration agreement.

waiver in *Citibank* relied on the amount of time that had passed before Citibank sought to compel arbitration, stating that Citibank waited "nearly five years [after the lawsuit commenced] before seeking to invoke its contractual right to arbitrate" and thus waived its arbitration rights. *Id.* at 665, 797 S.E.2d at 806. We squarely rejected this finding in *Citibank*, explaining that "we [would] not attribute the lengthy duration of inactivity in [that] case solely to Citibank" where "Mr. Perry [also] delayed more than four and one-half years before filing his counterclaim[.]" *Id.* at 666, 797 S.E.2d at 807.

Likewise, we now find that the respondents' counterclaim complaint significantly changed the character of the dispute between the petitioner and the respondents from a simple civil debt collection action to a much more complex lawsuit involving, *inter alia*, claims under the West Virginia Consumer Credit Protection Act. Without acknowledging that the respondents' counterclaims considerably altered the nature of the dispute between the parties, the circuit court simply "concluded that the petitioner waived its right to arbitrate due to the significant passage of time before moving [the court] to compel arbitration." Like this Court in *Citibank*, "we will not attribute the lengthy duration of inactivity in this case solely to [the petitioner]" where the respondents "delayed more than [three] and one-half years before filing [their] counterclaim[s]" and, in doing so, significantly altered the scope and character of the dispute. *Citibank*, 238 W. Va. at 666, 797 S.E.2d at 807. This Court has made clear that "[t]he delay [in filing a motion to compel arbitration] alone is meaningless; it is the circumstances surrounding the [party's] acts and language that determine whether the [party] implicitly intended to waive

18

the right to arbitrate." *Parsons*, 237 W. Va. at 149, 785 S.E.2d at 855. Given the circumstances before us, we find that the petitioner could not have intentionally relinquished its express contractual right to arbitrate the late-filed counterclaims through conduct that occurred before the counterclaims were even filed.

As a final matter, we address the respondents' contention that adopting the petitioner's position will permit parties to strategically delay asserting their contractual arbitration rights after a lawsuit has commenced and, as a result, undermine a principle goal of arbitration—the expeditious resolution of claims. However, this Court is similarly concerned that parties may intentionally delay filing counterclaims after a lawsuit has commenced in order to assert that the other party impliedly waived its contractual right to arbitrate disputes well outside the scope of the initial pleadings. We balance these competing concerns by giving reasonable effect to the plain language of an arbitration agreement that expressly preserves the parties' right to arbitrate counterclaims brought later in a lawsuit, while also recognizing that such language can, itself, be waived.[15] The respondents have made no such showing here. The petitioner acted consistently with its

---

[15] In *Citibank*, we explained that even the presence of a "no waiver" or "anti-waiver" clause cannot preclude a court from finding that a party has waived its contractual arbitration rights according to standard contract law principles. *See Citibank*, 238 W. Va. at 665-666, 797 S.E.2d at 806-807. This is "based on the view that the nonwaiver clause itself, like any other term of the contract is subject to waiver by agreement or conduct during performance." 13 Williston on Contracts § 39:36 (4th ed. 2026) (internal quotations and citations omitted) (explaining that "despite the existence of a so-called anti-waiver or 'failure to enforce' clause" in a contract, "a party to a written contract can waive a provision of that contract by conduct").

contractual arbitration rights by quickly moving to compel arbitration after the counterclaim complaint was filed. In fact, the petitioner's motion to compel arbitration was its first filing after the respondents moved to amend their answer and significantly expand the scope of the parties' dispute by virtue of their counterclaim complaint.

Based on the totality of the circumstances described above, we find that the petitioner acted consistently with its rights under the arbitration clause and, therefore, the respondents have failed to demonstrate by clear and convincing evidence that the petitioner intentionally relinquished its contractual arbitration rights. Accordingly, the circuit court erred in denying the petitioner's motion to compel arbitration based on a finding that the petitioner impliedly waived its contractual arbitration rights.

## IV. CONCLUSION

For the foregoing reasons, the January 18, 2024, order of the Circuit Court of Jackson County is hereby reversed and this case remanded to the circuit court for further proceedings consistent with this opinion.

Reversed and remanded with directions.